SAMUEL H. RUDOLPH, APPELLANT, V. ANDREW MURPHY & SON, APPELLEE.

FILED JULY 17, 1931. No. 27784.

*A. C. R. Swenson* and *Hawthorne Arey,* for appellant.

*Smith, Schall & Sheehan, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ., and HORTH, District Judge.

EBERLY, J.

This proceeding involves, first, an action by the plaintiff to compel the defendant corporation to transfer on its books to the plaintiff 5 shares of common stock, evidenced by certificate of stock No. 12, 15 shares of preferred stock, evidenced by certificate of stock No. 46, 10 shares of preferred stock, evidenced by stock certificate No. 103, 15 shares of preferred stock, evidenced by stock certificate No. 111, and 10 shares of preferred stock, evidenced by stock certificate No. 141. These various certificates are all in due form, were duly issued by the defendant corporation, and bear suitable assignments thereon to plaintiff. The evidence further discloses that plaintiff purchased this

stock, and, so far as the certificates of stock are concerned, is the owner thereof; that as such owner he made due presentation to, and demand upon, the defendant for proper registration; that he is *prima facie* entitled to have this stock transferred on the books of the defendant corporation and new certificates issued therefor. Shares of corporate stock being regarded as property, the owner of such shares may, as a general rule, dispose of them as he sees fit, unless of course the owner's privilege of disposing of his shares has been hampered by his own action. The printed form of transfer, with power of attorney commonly placed upon the back of the stock certificate, furnishes a convenient and appropriate means of transfer in the ordinary course of business. Such was the method properly employed in the instant case.

Indeed, though certificates of stock are not negotiable in the sense of the law merchant like bills and notes, still they are so framed and dealt with as to be transferable when properly indorsed, by mere delivery, and as they frequently convey by estoppel against a corporation or against prior holders, and as a large commercial use is made of such certificates as collateral security, it is to the public interest that such use should be simplified and facilitated by placing them as nearly as possible in the place of commercial paper. They are often spoken of and treated as quasi negotiable, that is, having some of the attributes and partaking of the character of negotiable instruments passing from hand to hand. Nor are these conclusions at variance with our statutory provisions which purport to give a corporation the power "to render interest of stockholders transferable." This we have construed as not intended to make the transferability of stock dependent on some affirmative act of the corporation authorizing its transfer, but to impress the stock with that quality as a consequence of the act of incorporation. *Miller v. Farmers Milling & Elevator Co.*, 78 Neb. 441.

We are also committed to the rule: "A *bona fide* purchaser of the capital stock of a corporation may sue in equity to compel the corporation to enter the assignment

upon its books, and to issue a new certificate therefor." *Everitt v. Farmers & Merchants Bank*, 82 Neb. 191.

It follows that, if the plaintiff is in truth and in fact the *bona fide* owner of the stock in suit, he is entitled to the relief for which he prays.

On the part of the defendant corporation, the proceedings before us involve a cross-action in the nature of an action for the specific performance of a certain oral contract made with one Baker, of which it is alleged the plaintiff had due notice prior to the purchase of the stock in controversy by him. It would, of course, follow that, if the defendant is the real owner of the stock in suit, plaintiff cannot prevail. Defendant in his pleading alleges, for the basis of his relief, that "on or about the 1st day of July, 1927, * * * defendant entered into an oral contract with the said C. E. Baker whereby the said C. E. Baker agreed, as the agent of said defendant, to solicit for said defendant, the purchase of stock in defendant company, * * * in consideration of which services said defendant agreed to pay the said C. E. Baker $55 per share on all purchases of stock which the said C. E. Baker was able to procure where stockholders were willing to sell for less than $55 per share, it being further agreed that where stockholders were asking a price greater than $55 per share, the said C. E. Baker was to report the same to the defendant company and the defendant company was to exercise its discretion as to whether or not it would purchase the same, in which event the said C. E. Baker was to receive nothing for his services in connection with that character of purchase." It is admitted that the defendant never paid Baker any money either for compensation or for carrying on, or to be used in, the business on its behalf. Thereafter the defendant in its pleading in effect sets forth that Baker in his own behalf, not pursuant to the contract of agency, but in violation of its terms, proceeded to purchase for and on behalf of himself stock in suit, which was purchased by the plaintiff from Baker with due notice of the terms of the oral contract of agency between the defendant and Baker. As relief, the defendant

asks for specific performance of this contract, and "that said plaintiff be required to deliver said stock to the defendant upon the payment to the plaintiff by the defendant of the amount ascertained by the court to have been paid by said plaintiff for said stock," etc.   It is nowhere alleged that either plaintiff or Baker are insolvent.

Thus, we have in effect a proceeding in equity to which Baker was not a party, prosecuted by the defendant against plaintiff, to secure specific performance of this oral contract of agency with Baker, which contract plaintiff never made or assumed.   If this oral contract was ever made, the facts alleged in defendant's answer disclose that it was in fact renounced and repudiated by the agent Baker.   As to the power of renunciation possessed by agents under contracts of agency, the principles applicable are:   "It has already been seen that agency depends usually upon the assent of both parties.   It has been seen also that the principal may, in general, withdraw his assent at any time, subject to liability in damages in case he does so in violation of his agreement.   Substantially correlative is the situation of the agent.   He may, in general, renounce his agency at any time.   His *power* to do this, in the sense that his further performance will not be specifically enforced, is coextensive with the principal's power to revoke; but his *right* to do so, is, like the principal's right to revoke, limited by his contracts in the premises.   Where the agency is indefinite in duration the agent may, upon giving reasonable notice, sever the relation at any stage without liability to the principal, and will be entitled to compensation and reimbursement for his services and expenses up to that time.   Where, however, the agency was created for a definite period, or the accomplishment of a particular result was undertaken for a valuable consideration, the agent who renounces before the expiration of that period, or before the performance of his undertaking, will be liable to his principal for the damages he may sustain thereby."   1 Mechem, Agency (2d ed.) 456, sec. 641.   This is undoubtedly in principle the law of Nebraska.   *Sjogren v. Clark,* 106 Neb. 600; *Staats v. Mangelsen,* 105 Neb. 282;

*Hallstead v. Perrigo,* 87 Neb. 128. As to what redress the injured principal may be entitled where a valid contract of agency is wrongfully renounced, the same authority above quoted from (Mechem on Agency) says in section 642: "The action for damages, as suggested in the last section (641) is, moreover, ordinarily the only remedy for the breach of the contract, for it is well settled, as a general rule, that courts will not undertake to enforce the specific performance of contracts for personal service, or interfere by injunction to prevent their breach." See, also, 5 Pomeroy, Equity Jurisprudence (2d ed.) 4893, sec. 2181, and note.

Indeed, on the right to compel the specific performance of a contract to serve another, a distinguished jurist has said: "It would be an invasion of one's natural liberty to compel him to work for, or to remain in the personal service of, another. One who is placed under such restraint is in a condition of involuntary servitude — a condition which the supreme law of the land declares shall not exist within the United States, or in any place subject to their jurisdiction." *Arthur v. Oakes,* 63 Fed. 310.

Specific performance is not generally a matter of legal right, but is directed rather to the sound legal discretion of the court, and it will not be granted where its enforcement would be unjust. *Edmiston v. Hupp,* 98 Neb. 84; *Hoctor-Johnston Co. v. Billings,* 65 Neb. 214.

"To warrant the exercise of the court's discretion, the case must be a clear one. * * * And relief may be denied, although the proof may come far short of a showing sufficient to authorize the court to grant a rescission or cancelation of a contract. Not only must the contract to be enforced be a legal obligation, mutual, certain in its terms, and based on a sufficient consideration, but it must also be equitable." 23 Standard Ency. of Procedure, 1009, 1010.

This court is committed to the doctrine: "If one party to a contract cannot enforce substantial performance, a court of equity will not decree specific performance at the instance of the other party. The right to specific performance must be mutual and reciprocal." *Moore v. Markel,*

112 Neb. 743. See *Hoctor-Johnston Co. v. Billings,* 65 Neb. 214.

In this case there is no mutuality of contract between the litigants whatever. Baker, the alleged maker of the contract sought to be enforced, is not even a party to the proceedings. Even if we have before us an attempt to secure redress against the plaintiff for wilfully and wrongfully interfering with the contract of agency pleaded,, and enticing and inducing the agent to abandon the performance of his duty to his principal, this will not sustain the equitable proceeding. At most, it would amount to a tort involving a liability for damage constitutionally to be determined by a jury. 2 C. J. 886.

But plaintiff has denied the alleged making of this contract of agency by the defendant with Baker, and expressly denied that he had any knowledge of that fact, if it was a fact, prior to the purchase. We are required to determine this question *de novo.* Even though giving due consideration to the fact that the trial court personally observed the witnesses, still we are forced to the conclusion that the evidence contained in the bill of exceptions in view of all the admitted facts and circumstances, preponderates in favor of the plaintiff. Particularly is this true as to the fact that the plaintiff had no notice of the alleged contract in suit at or prior to the purchase of this stock.

It follows, therefore, that both on the question of fact as well as law the trial court erred in its determination of this case, and plaintiff is entitled to judgment as prayed. The judgment for defendant will, therefore, be reversed, and the cause remanded, with directions to enter judgment in favor of plaintiff and against defendant, as prayed in plaintiff's petition.

REVERSED.