990 P.2d 654

Laura J. PANZINO, Plaintiff–Appellee,

v.

CITY OF PHOENIX, Defendant–Appellant.

Laura J. Panzino, a single woman, Plaintiff–Appellant,

v.

The City of Phoenix, a municipal corporation, and Denise Katherine Karlin and John Doe Karlin, wife and husband, Defendants–Appellees.

Nos. 1 CA–CV 96–0425, 1 CA–CV 96–0609.

Court of Appeals of Arizona, Division 1, Department E.

March 11, 1999.

Review Granted Oct. 26, 1999.

454

Robert F. Clarke, Phoenix, Attorney for Laura J. Panzino.

Jones, Skelton & Hochuli by David C. Lewis and City Attorney's Office by Stephen J. Craig, Phoenix, Attorneys for the City of Phoenix.

Jones, Skelton & Hochuli by Eileen J. Dennis, Phoenix, Attorneys for Appellees Karlins.

## OPINION

FIDEL, Presiding Judge.

¶ 1. Attorney David Appleton so neglected the personal injury claims of his client Laura Panzino that the trial court dismissed them for lack of prosecution.' Panzino replaced Appleton, but, because Appleton's neglect was not excusable, her new attorney could not achieve the reinstatement of her claims on the ground of excusable neglect. This appeal concerns Panzino's alternative effort to achieve reinstatement on the equitable ground that Appleton had so substantially neglected her claims as to constructively abandon her representation.

### I. History

¶ 2. On January 18, 1993, Laura Panzino was struck by a car driven by Denise Karlin as she walked in a Phoenix street to bypass rainwater ponding in her path. Panzino, seriously injured, retained attorney David Appleton to represent her. Appleton eventually, inexplicably, filed two identical personal

injury actions against the same defendants, neither of which he timely pursued.

### A. Case 1

¶ 3. On July 16, 1993, Appleton filed Maricopa County Cause No. CV 93–16143 ("case 1"), naming Karlin and the City of Phoenix as defendants. In anticipation of suing the City, Appleton had served a timely notice of claim upon the City in May 1993, as required by Ariz.Rev.Stat. Ann. ("A.R.S.") § 12–821.[1] The notice of claim and complaint were the high water marks of Appleton's efforts to advance case 1; after filing it, Appleton ignored it for almost two years. Specifically,

- Appleton never attempted to serve case 1 upon Karlin. Nor did he respond to inquiries from Karlin's insurer, State Farm, that Panzino forwarded to him in 1993 and 1994. Nor did he respond to direct inquiries from State Farm in 1994. Indeed, he failed even to respond to State Farm's request to *acknowledge* that he represented Panzino.
- Although the City repeatedly sought information from Appleton by letter and by phone from the time he filed the notice of claim, Appleton neglected to respond to the City's inquiries either before or after filing the complaint.
- Although Appleton was obliged to serve the summons and complaint by January 12, 1994,[2] Appleton neither attempted service by that deadline nor sought an extension from the court.
- Although on May 3, 1995, the court administrator sent Appleton a "Notice of Intent to Dismiss" the lawsuit if it was not served by June 5, 1995, Appleton served neither defendant by that date.

¶ 4. Appleton briefly returned his attention to case 1 on June 7, 1995, two days *after* the court's deadline for dismissal, when he finally gave the summons and complaint to a pro-

cess server. The process server served the City two days later. Appleton did not serve case 1 upon Karlin at all.

¶ 5. Delivering the summons and complaint for service was Appleton's first effort to advance the case since filing it twenty-three months earlier and his last effort for four and one-half months more. When the City moved on June 19, 1995, to dismiss the complaint for lack of timely service, Appleton had ten working days within which to respond. *See* Uniform Rules of Practice for the Superior Court (Unif. R.P.) 4. He did not respond. On July 29, 1995, the court administrator dismissed the complaint for lack of prosecution. Appleton still did not respond.

¶ 6. On September 8, 1995, the trial judge, apparently unaware that the court administrator had issued an order of dismissal, set the City's motion to dismiss for oral argument and notified Appleton that he had not yet responded to the motion. Appleton *still* did not respond. For six weeks longer he did nothing. Then on October 20, 1995, he filed a response, acknowledged his failure to calendar any deadlines, and placed the blame for his omissions on the failure of the court to give him better notice. Appleton asked the trial court to retroactively extend his time to serve the City until June 9, 1995, the date when service was achieved. The trial court denied Appleton's motion, granted the City's motion to dismiss, and on December 12, 1995, entered judgment dismissing the complaint against the City.

### B. Case 2

¶ 7. On January 13, 1995, eighteen months after filing case 1, and twelve months and a day after the expiration of the time allotted to serve it,[3] Appleton filed Maricopa County Cause No. CV 95–00773 ("case 2") against Karlin and the City of Phoenix, an action identical to case 1. Appleton then ignored

---

1. Panzino claimed that the City contributed to her injury by failing to provide adequate drainage, sidewalks, curbs, or lighting in the vicinity where she was struck.

2. Rule 4(i), Arizona Rules of Civil Procedure, requires service within 120 days of filing a complaint. By filing an affidavit with the complaint, Appleton achieved a sixty-day enlargement of

that period pursuant to Administrative Order R–93–0027, which the supreme court issued to relieve a congestion of case filings arising from statutory changes peripheral to the issues of this case. The sixty-day extension made his service deadline January 12, 1994.

3. *See supra* n. 2.

case 2, like its predecessor, until the superior court advised him in a "Notice of Intention to Dismiss" dated April 14, 1995, that case 2 would be dismissed if service were not completed by May 14, 1995. Appleton ignored this notice, as he had ignored others, until the allotted time for service had virtually expired. Then on May 11, 1995, at 4 p.m., with less than three days left to achieve service, he engaged a process server to attempt to serve case 2 on both Karlin and the City.

¶ 8. The process server served the City with case 2 on May 12, 1995. (Appleton had not yet served the City with case 1 and would not attempt to do so for another month.) The complaint against the City in case 2 was barred, however, by the statute of limitations, and the trial court soon thereafter granted the City's motion for dismissal, to which Appleton filed no response.

¶ 9. As for Karlin, Appleton had ignored repeated overtures from her insurer and now did not know where to find her. The process server, concluding that Karlin had left the state, attempted service on the Superintendent of the Arizona Motor Vehicle Department pursuant to A.R.S. §§ 28–2326 and 28–2327 (then enumerated as §§ 28–502 and 28–503), delivering the summons and complaint to the Superintendent's office on May 25, 1995, eleven days after the designated dismissal date. To complete statutory service via the Superintendent, Appleton also sent the summons and complaint to Karlin by registered mail at her last known Phoenix address, but the mailing was returned as undeliverable. And though an undelivered mailing plainly failed to satisfy A.R.S. § 28–2327(A)(1)(b), which requires the plaintiff to file the defendant's return receipt, Appleton filed a patently noncompliant Notice of Service with the court on August 2, 1995. Thereafter, as before, he did nothing until December 19, 1995, when, in his single effective act of lawyering since the filing of case 1, he consented to the substitution of Panzino's present lawyer, Mr. Clarke.

## C. Efforts of Substitute Counsel

¶ 10. On December 19, 1995, a week after the trial court dismissed case 1 against the City, Panzino replaced Appleton with Clarke, her current lawyer, in both cases 1 and 2. In case 1, Clarke promptly moved for relief from judgment pursuant to Rule 60(c)(6), Arizona Rules of Civil Procedure or, alternatively, leave to refile pursuant to A.R.S. § 12–504(A). The City opposed the motion.

¶ 11. Concurrently, Clarke moved to continue case 2 on the inactive calendar, acknowledging the neglect of prior counsel, and seeking time to revive case 1 against the City, consolidate the two cases, and commence active prosecution of them both. When Clarke served the motion on Karlin's insurer, the insurer engaged counsel, who appeared and moved to dismiss on the grounds that Karlin had never been served, the time for service had abated, and the statute of limitations had run. On March 4, 1996, before this motion could be heard, Clarke served Karlin where she resided out of state.

¶ 12. The motions came on for hearing before different judges. In case 1, Judge Galati found Panzino entitled to relief from judgment on the ground that Appleton had so completely neglected her case as to constructively abandon her claim against the City. In case 2, Judge Katz denied Panzino's motion to continue on the inactive calendar, granted Karlin's motion to dismiss, and, on the court's own motion, consolidated the two cases so that Judge Galati might consider any subsequent motion to reinstate case 2.

¶ 13. Clarke so moved. Arguing that Appleton had constructively abandoned Panzino's claim against Karlin, just as he had constructively abandoned her claim against the City, he sought either reinstatement of case 2 pursuant to Rule 60(c), or leave to refile it pursuant to A.R.S. § 12–504(A). Judge Galati denied the motion, finding that Appleton's efforts within case 2, however inept, were nonetheless sufficient to foreclose the court from construing his conduct as an abandonment of the Karlin claim.

¶ 14. In case 1, the City has timely appealed from the reinstatement of Panzino's action against the City. In case 2, Panzino has timely appealed from the denial of reinstate-

ment of her action against Karlin.[4] Although the cases had been consolidated in the trial court, we declined initially to consolidate them on appeal; choosing to spare the parties the complex briefing challenges that would arise from Panzino's status as appellee in one matter and appellant in the other, we scheduled the matters instead for separate briefing but for sequential oral argument before the same panel on the same day. As we now dispose of common issues, however, which arise from a common source—Appleton's sustained neglect of his client's claims against two defendants—we re-consolidate the cases for comparative analysis and disposition.

## II. Constructive Abandonment and Rule 60(c)

¶ 15. Rule 60(c)(1) of the Arizona Rules of Civil Procedure permits relief from a judgment attributable to "excusable neglect." As there was nothing excusable about Appleton's neglect, Panzino understandably does not seek relief upon that ground. Instead, she seeks relief pursuant to Rule 60(c)(6), an equitable catch-all that authorizes the court to set aside a final judgment for "any ... reason justifying relief" beyond the specific reasons listed in clauses (1) through (5). *Gorman v. City of Phoenix,* 152 Ariz. 179, 181–82, 731 P.2d 74, 76–77 (1987); *Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 632, 688 P.2d 637, 640 (1984).

¶ 16. Rule 60(c)(6) applies only when our systemic commitment to finality of judgments is outweighed by " 'extraordinary circumstances of hardship or injustice.' " *Bickerstaff,* 141 Ariz. at 632, 688 P.2d at 640 (quoting *Webb v. Erickson,* 134 Ariz. 182, 187, 655 P.2d 6, 11 (1982)). The trial court has broad discretion in using this equitable tool, but in doing so, may not " 'misapply law or legal principle[s],' " act " 'arbitrarily or inequitably,' " or " 'make decisions unsupported by facts or sound legal policy.' " *Gorman,* 152 Ariz. at 182, 731 P.2d at 77 (quoting *City of Phoenix v. Geyler,* 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985)).

¶ 17. Panzino's inability to attribute excusable neglect to her former lawyer poses a substantial obstacle to her search for Rule 60(c)(6) relief. In general, "it is only when an attorney's failure to act is legally excusable that relief may be obtained." *Bickerstaff,* 141 Ariz. at 633, 688 P.2d at 641. In contrasting cases of inexcusable neglect, "[a]s a general rule, the client is charged with the actions and omissions of [her] attorney." *Mission Ins. Co. v. Cash, Sullivan & Cross,* 170 Ariz. 105, 108, 822 P.2d 1, 4 (App.1991); *see also Carroll v. Abbott Laboratories,* 32 Cal.3d 892, 187 Cal.Rptr. 592, 654 P.2d 775 (1982).

¶ 18. These general rules, however, are not without exception. Our courts on three occasions have reserved the possibility that equitable relief "may be warranted," *McKernan v. Dupont,* 192 Ariz. 550, 555, 968 P.2d 623, 628 (App.1998), when the lawyer's neglect is so egregious that it constructively amounts to a "total abandonment of actual representation." *See Bickerstaff,* 141 Ariz. at 633, 688 P.2d at 641; *Mission,* 170 Ariz. at 109, 822 P.2d at 5. To permit relief under such circumstances is sometimes described as the "positive misconduct" exception. *See Carroll v. Abbott Laboratories,* 187 Cal.Rptr. 592, 654 P.2d at 778 (quoting *Buckert v. Briggs,* 15 Cal.App.3d 296, 93 Cal.Rptr. 61, 64 (1971)) (" '[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct,* and the person seeking relief is relatively free from negligence. The exception is premised upon the concept [that] the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship,* and for this reason his negligence should not be imputed to the client' "); *see generally* Thomas N. Thrasher and Gary T. Blate, *Positive Misconduct: Excusing an Attorney's Inexcusable Neglect,* 15 Western St. U.L. Rev 667 (1988). However, in *Mission,* the exception was equally well described as one for "egregious conduct" that is "consistent, wide-ranging, and of long duration." 170 Ariz. at 109, 822 P.2d at 5.

4. On the Karlin judgment, Panzino has only appealed from the denial of Rule 60(c) relief and not from the denial of an opportunity to refile her claim pursuant to A.R.S. § 12–504(A).

¶ 19. Because no Arizona appellate court to date has found neglect so egregious and pervasive as to amount to an abandonment of the client, no Arizona court has squarely decided whether to recognize an exception for such misconduct. We are urged by Karlin and the City to repudiate the exception altogether and to conclude, in effect, that equity should never extend relief from judgment to clients who are the victims of their lawyers' inexcusable neglect. We decline to so starkly foreclose the availability of equitable relief. We conclude instead that equity should take notice in those occasional cases when it would be "unconscionable to apply the general rule charging the client with the attorney's neglect." *Carroll*, 187 Cal.Rptr. 592, 654 P.2d at 779.

¶ 20. We are unpersuaded by the argument that to permit such relief will significantly undermine finality of judgments. We see no floodgates here. Similar arguments doubtlessly greeted the adoption of Rule 60(c)(6) itself; yet, despite the broad remedial language of that rule, the courts have used it sparingly, reserving its application for extraordinary circumstances. The courts should be no less sparing in applying a far narrower standard that permits equitable relief only when a lawyer's neglect is so egregious that it is " 'nothing short of leaving his clients unrepresented.' " *Mission*, 170 Ariz. at 109, 822 P.2d at 5 (quoting *Boughner v. Secretary of Health, Education & Welfare*, 572 F.2d 976, 977 (3d Cir.1978)); *see also Carroll*, 187 Cal.Rptr. 592, 654 P.2d at 779 (reserving relief for "unconscionable" cases); *Daley v. County of Butte*, 227 Cal.App.2d 380, 38 Cal.Rptr. 693, 700 (1964) (providing relief where lawyer's "consistent and long-continued inaction was so visibly and inevitably disastrous, that his client was effectually and unknowingly deprived of representation").

¶ 21. We are likewise unpersuaded that to permit equitable relief under such circumstances will encourage lawyers who have lapsed into carelessness to deliberately expand their neglect to the level of egregiousness as a tactic to save their client's case. The narrow availability of relief, the uncertainty of achieving it, and the specter of malpractice lawsuits, professional insurance rate increases,[5] state bar disciplinary proceedings, and reputational harm should generally discourage such a course of action, if considerations of professionalism do not. *Cf. Mission*, 170 Ariz. at 109 n. 4, 822 P.2d at 5 n. 4 ("positive misconduct" exception should be applied sparingly to avoid inducing tactical expansion of neglect). Moreover, as we shall discuss later in this decision, a sharp and immediate source of deterrence lies available to the trial court in the imposition of an adversary's fees and costs directly upon a lawyer whose inexcusable neglect has caused those fees and costs to be incurred. *See* ¶ 41, *infra*.

¶ 22. We turn then to the question whether Panzino is entitled to equitable relief as a consequence of Appleton's neglect of her claims against the City and against Karlin.

### A. The City Claim

¶ 23. The trial court found that for the almost two years that elapsed between July 16, 1993, and June 7, 1995, Appleton did nothing to pursue Panzino's case. He did not serve the defendants, contact Panzino, conduct discovery, or file motions or pleadings of any kind. The court found that Appleton's abandonment of his client's claim against the City was "consistent, wide-ranging, and of long duration" and entitled Panzino to relief under Rule 60(c)(6).

¶ 24. The City responds that Appleton did not totally abandon his client, pointing out that he launched case 1 by serving a timely notice of claim, filing a timely complaint in 1993, and properly applying for an extension of time to serve the complaint. Appleton's timely initiation of the lawsuit is immaterial to our inquiry, however, as it preceded the extended period of complete neglect that culminated in the dismissal of the suit—the

---

5. The City argues that, in setting forth its reasons for granting Rule 60(c) relief against the City, the trial court improperly included Appleton's lack of legal malpractice insurance. We agree that this was an inappropriate basis, but disagree that it was a significant basis for decision. We find instead that the trial court's grant of relief on the City claim was well supported for the reasons set forth in the next section of this opinion.

period that the trial court construed as an abandonment.

¶ 25. The City next argues that, although Appleton neglected case 1 for almost two years after filing it, this cannot be construed as an abandonment, given Appleton's eventual, though unsuccessful, efforts to fend off dismissal in 1995. Specifically, Appleton filed a second action—case 2—against the City, telephoned the City's attorney when the City moved to dismiss case 2, agreed to permit dismissal of that case, and responded both in writing and at oral argument to the City's motion to dismiss case 1.

¶ 26. Appleton indeed made these efforts in 1995, but we do not find them incompatible with a finding that he constructively abandoned Panzino's case. We see them rather as equivalent to a lifeguard attempting the untimely resuscitation of a swimmer he has left to drown.

¶ 27. In some published cases, we agree, the lawyer has not even attempted resuscitation. *See United States v. Cirami,* 563 F.2d 26, 33–35 (2d Cir.1977) (attorney failed to respond to summary judgment motion and would not disclose reasons for his inaction when new attorney prepared motion to vacate judgment); *Daley,* 38 Cal.Rptr. at 700 (attorney failed to appear in court or communicate with court, client, or other counsel and would not sign a substitution of attorney for more than five months); *Orange Empire Nat'l Bank v. Kirk,* 259 Cal.App.2d 347, 66 Cal.Rptr. 240, 244–46 (1968) (attorney failed to appear for trial and failed to take remedial action, even after assuring client that he would do so); *Buckert,* 93 Cal.Rptr. at 64 (after failing to appear at trial, attorney broke promise to seek to have judgment set aside and never contacted plaintiffs again). The clients of those lawyers, however, were no worse off than Panzino, who derived no benefit whatsoever from Appleton's hapless, misconceived, and characteristically dilatory efforts to salvage a claim that he had damaged beyond repair.

¶ 28. Naming the City in case 2, for example—which Appleton filed in 1995, yet served

*before* case 1—was a wholly unproductive diversion; obviously barred from proceeding by the statute of limitations, Appleton acceded without response to the City's motion to dismiss. As for Appleton's response to the motion to dismiss case 1, Appleton's pace speaks for itself. The City filed its motion to dismiss on June 19, 1995. The rules gave Appleton ten days to respond; he took four months to do so. In the interim, he ignored not only the motion; he ignored the court administrator's July 29, 1995, order of dismissal, and he ignored an express notice from the trial court on September 8, 1995, that he had not yet responded to the motion to dismiss.[6] Appleton waited to respond until October 20, 1995, the Friday before a Tuesday oral argument. And the thrust of his response, as we have indicated, was to acknowledge that he had failed to calendar any deadlines but to fault the trial court for not sending him better notice.

¶ 29. Appleton's longstanding and pervasive neglect distinguishes his conduct from that of the lawyers in *Mission* and *Carroll,* to which the City invites comparison. The misconduct in both cases, as described by *Mission,* was confined to "a single part of a wide-ranging case" and not "so pervasive" as to permit relief. *Mission,* 170 Ariz. at 110, 822 P.2d at 6. In *Mission,* the lawyer had served the complaint, had been "active in discovery," had served and answered interrogatories and requests to produce, had filed witness and exhibit lists, and had filed two motions to set, but then neglected to move to lift an injunction entered in another case that barred proceeding with the first. *Id.* at 106, 107, and 110, 822 P.2d at 2, 3, and 6. In *Carroll,* the lawyer had served the complaint on two defendants, attended his client's deposition, exchanged discovery and accomplished a settlement with one defendant, and propounded interrogatories and requests for production to the second. 187 Cal.Rptr. 592, 654 P.2d at 779. And when his "gross[ ] mishandl[ing]" of a discovery request from the second defendant resulted in dismissal of that claim, he commenced an immediate ef-

**6.** The record does not explain what miscommunication within the superior court resulted in the trial court still processing a case in September that the court administrator had dismissed in July.

fort to save the claim. *Id.* 187 Cal.Rptr. 592, 654 P.2d at 776 (motion for relief filed five days after order of dismissal).

¶ 30. In contrast to the lawyers in these cases, Appleton neglected not just one part but the entirety of his client's claim. One may fairly summarize his representation by saying that he filed Panzino's claim against the City, parked it on the inactive calendar, and abandoned it, ignoring the rules, ignoring notices from the court, ignoring even the court administrator's dismissal order, and calendaring no deadlines. Though he managed finally to act when a trial court administrative snafu resulted in a *post*-dismissal hearing on the City's motion to dismiss, this grossly untimely and ineffective effort could not redeem his fatal inactivity in the past. Appleton's neglect of Panzino's claim against the City was egregious; it was "consistent, wide-ranging, and of long duration"; and it " 'amounted to nothing short of leaving his client[ ] unrepresented.' " *Mission,* 170 Ariz. at 109, 822 P.2d at 5 (quoting *Boughner,* 572 F.2d at 977). The trial court did not err in finding in this history an occasion for extraordinary relief from judgment under Rule 60(c)(6).

### B. The Karlin Claim

■ ¶ 31. We turn next to the Karlin claim, in which the trial court denied Rule 60(c) relief, finding that Appleton had actively, "albeit ineptly," pursued the 1995 action and that his actions did not constitute an abandonment.

¶ 32. In its explanation of its ruling, the trial court considered only the procedural history of case 2. Karlin urges us to do the same, arguing that, because Panzino never served Karlin with the first lawsuit, "[a]ny facts associated with that first complaint are irrelevant to the issue on appeal here."

¶ 33. If we confined our attention to Appleton's handling of case 2, as the trial court did and as Karlin urges us to do, this would be an easy case. After filing the complaint on January 13, 1995, Appleton neglected it for

only four months. On May 11, after receiving a superior court advisory in April that the case would be dismissed if service were not completed by May 14, Appleton undertook to serve it. His service effort was too late to meet the deadline (he purported to serve Karlin by delivering a copy to the Superintendent of the Arizona Motor Vehicle Department on May 25, eleven days after the designated dismissal date), and his affidavit of service was patently noncompliant with statutory requirements. But, examining case 2 alone, four months of neglect did not amount to an abandonment.

¶ 34. We conclude, however, that it would unfairly truncate the record of Appleton's inaction to confine our attention to case 2. Panzino hired Appleton in February 1993 to seek recovery against Karlin. His acts and omissions from that date forward—his steps, missteps, and inertia—were of a continuum and must be viewed as such.[7]

¶ 35. Although Appleton filed a lawsuit against Karlin in July 1993, he made no effort either to serve it or to discuss settlement with State Farm, her insurer. Not only did he fail to initiate settlement discussion, he neglected to respond to repeated inquiries by State Farm, including one request that he merely acknowledge that he was Panzino's lawyer. When Appleton filed case 2 against Karlin in 1995, there was no need to do so and no advantage in doing so. Filing that case did not take the place of serving Karlin; nor did it advance the neglected purpose of finding Karlin, which would soon prove a substantial obstacle; nor did it contribute to the opening of settlement discussions, which Appleton might have undertaken at any time merely by responding to the inquiries of State Farm. In short, though Appleton emerged momentarily from an inert state to file case 2, that activity did not advance his client's interest against Karlin. Upon its filing, she had incurred two filing fees instead of one and now had two actions instead of one that lay unserved and unattended in the superior court.

---

**7.** The law firm appearing for Karlin also appears on behalf of the City. We have heeded Counsel's request on behalf of the City that we consider Appleton's filing of case 2 as part of a continuum with case 1 in his handling of the City claim. *See* ¶ 25, *supra.* Similarly, we consider case 1 as part of a continuum with case 2 in his handling of the Karlin claim.

¶ 36. Not until May 11, 1995, did Appleton finally awaken to the need to serve the Karlin case, choosing case 2 as his vehicle instead of the still undismissed case 1. He then engaged in some activity, to be sure. Yet his activity was too little, too late, and wholly without value to his client. To recap:

- Informed by the trial court on April 14 that case 2 would be dismissed if not served by May 14, and unaware where and whether Karlin could be found, Appleton waited until May 11 to engage a process server to find Karlin and serve her.

- Unable to find Karlin, Appleton attempted service on the Superintendent of Motor Vehicles, but not until May 25, 11 days after the expiration of his service deadline.

- Service on the Superintendent, even had it been timely, was a vain gesture, for it could not constitute service on Karlin without a valid mailing address for Karlin, something Appleton did not manage to acquire. *See* A.R.S. § 28–2327(A)(1)(b).

- Mailing the complaint to Karlin's last known address and filing an affidavit of service with the court were equally vain gestures, as Appleton lacked a return receipt from Karlin, a statutory prerequisite for valid service. *Id.*

¶ 37. In summary, because Appleton lacked Karlin's address, his effort to achieve service pursuant to A.R.S. § 28–2327(A)(1)(b) was pointless wheel-spinning and should have been identified as such by anyone who took the time to read the statute. We decline to find this exercise sufficient to overcome twenty-eight months of functional abandonment of the Karlin claim. The judgments of equity are practical, and equitable courts must not indulge in meaningless distinctions. There is no practical difference between Appleton's neglect of the Karlin claim and his neglect of the City claim. Each was egregious; each was consistent, wide-ranging, and of long duration; each was fatal. And though in each case, Appleton made a futile resuscitative effort, in each it signified nothing, for the claim had died. We therefore conclude that, just as Appleton abandoned his client in her claim against the City, he similarly abandoned her in her claim against Karlin. Under Rule 60(c)(6) Panzino is equally entitled to relief upon both claims.

### C. The Client

¶ 38. To qualify for equitable relief under the "positive misconduct" exception, other courts not only have required that the attorney's acts or omissions amount to an abandonment, but also that "the person seeking relief is relatively free from negligence." *Buckert,* 93 Cal.Rptr. at 64; *cf. Daley,* 38 Cal.Rptr. at 700–01 (While clients must be free of negligence, the courts must not expect them "to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers.").

¶ 39. Neither defendant argues in its briefs that Panzino should be denied the relief she seeks because she negligently oversaw Appleton's handling of her claim.[8] Accordingly, this element does not weigh in our decision.

### III. ATTORNEYS' FEES

¶ 40. The City asks us to assess against Appleton the reasonable attorneys' fees and costs that it incurred because of his unreasonable delay and expansion of the proceedings. *See* A.R.S. § 12–349(A)(3) (permitting fee and cost award against a lawyer who "[u]nreasonably delays or expands the proceedings"). In cases of lawyer neglect, to couple such a sanction with a grant of Rule 60(c) relief serves two purposes. First, it transfers the costs of neglect to the person who caused them to be incurred. Second, it serves to deter the deliberate expansion of neglect to the level of egregiousness as a tactic to save the client's case. *See* ¶ 21, *supra.*

¶ 41. We may not make such an award in this appeal because Appleton is not a party to it and no longer represents Panzino and because we are not equipped to provide an evidentiary hearing on the subject. However, with appropriate notice to Appleton and

---

8. In her motion for relief from judgment, Panzino asserted that she is cognitively impaired as a result of the accident and supported her assertion with hospital records indicating that she was discharged with a diagnosis of "closed head injury with concussion and cognitive defects in need of active neurorehabilitation."

an opportunity to be heard, the trial court may consider such a request from either defendant upon remand.

### IV. CONCLUSION

¶ 42. For the foregoing reasons, we affirm the grant of Rule 60(c)(6) relief on the claim against the City, reverse the denial of Rule 60(c)(6) relief on the claim against Karlin, and remand for proceedings consistent with this opinion.

CONCURRING: RUDOLPH J. GERBER, Judge, and JON W. THOMPSON, Judge.