999 P.2d 198

**Laura J. PANZINO, Plaintiff–Appellee,**

v.

**CITY OF PHOENIX, Defendant–Appellant.**

**Laura J. Panzino, a single woman, Plaintiff–Appellant,**

v.

**City of Phoenix, a municipal corporation, and Denise Katherine Karlin and John Doe Karlin, wife and husband, Defendants–Appellees.**

**No. CV–99–0193–PR.**

Supreme Court of Arizona, En Banc.

May 10, 2000.

444

Jones, Skelton & Hochuli by David C. Lewis, Phoenix, Attorneys for the City of Phoenix.

City of Phoenix by Stephen J. Craig, Phoenix, Attorneys for the City of Phoenix.

Jones, Skelton & Hochuli by Ronald W. Collett and Eileen J. Dennis, Phoenix, Attorneys for the Karlins.

Robert F. Clarke, P.C. by Robert F. Clarke and Sonja M. Yurkiw, Phoenix, Attorneys for Panzino.

Bury, Moeller, Humphrey & O'Meara, P.C. by Andrew J. Petersen, Tucson, Attorneys for Amicus Curiae Arizona Association of Defense Counsel.

**OPINION**

McGREGOR, Justice.

¶1 The issue presented is whether Arizona should adopt the positive misconduct rule, which permits a client whose attorney has abandoned him or her to obtain relief from a judgment by invoking Rule 60(c)(6) of the Arizona Rules of Civil Procedure. We decline to adopt the rule because doing so would require us to abandon our long-standing interpretation of Rule 60(c) and to overturn established principles of law.

**I.**

¶2 On January 18, 1993, a car driven by Denise Karlin struck Laura Panzino as she walked in a street to avoid rainwater ponding in her path. Panzino, seriously injured, retained attorney David Appleton to represent her. Appleton eventually filed two identical personal injury actions against the same defendants, neither of which he timely pursued. On the motion of defendants, the trial court dismissed both actions.

¶3 Panzino then retained new counsel, who moved for relief under Rule 60(c)(6), Arizona Rules of Civil Procedure. The trial court, relying upon the positive misconduct rule, granted relief in one action and denied relief in the other. The court of appeals, also adopting the positive misconduct rule, held that Rule 60(c)(6) provided Panzino relief in both actions. The court concluded that Appleton's omissions and actions in representing Panzino demonstrated "longstanding and pervasive neglect" and constituted complete and total abandonment of his client. *See Panzino v. City of Phoenix*, 195 Ariz. 453, 459, 990 P.2d 654, 660 (1999). Although Appleton disputes that characterization, we assume for purposes of this opinion that Appleton's actions comprised longstanding and pervasive neglect, that he completely abandoned his client, and that Panzino was relatively free from negligence.

¶4 We granted review to decide whether Arizona should adopt the positive misconduct rule. We exercise jurisdiction pursuant to article VI, section 5.3 of the Arizona Constitution, Rule 23 of the Arizona Rules of Civil Appellate Procedure, and Arizona Revised Statutes Annotated (A.R.S.) section 12–120.24.

**II.**

¶5 Rule 60(c) of the Arizona Rules of Civil Procedure allows a trial court to

grant relief from judgment for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

ARIZ. R. CIV. P. 60(c).[1] This rule " 'is primarily intended to allow relief from judgments that, although perhaps legally faultless, are unjust because of extraordinary circumstances that cannot be remedied by legal review.' " *Hyman v. Arden–Mayfair, Inc.,* 150 Ariz. 444, 447, 724 P.2d 63, 66 (1986) (quoting *Tippit v. Lahr,* 132 Ariz. 406, 408–09, 646 P.2d 291, 293–94 (1982)). Thus, "[t]he purpose of the rule is to provide relief for those mistakes and errors which inevitably occur despite diligent efforts to comply with the rules." *City of Phoenix v. Geyler,* 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985).

■ ¶ 6 To obtain relief under Rule 60(c)(6), the subsection on which Panzino relies, a party must make two showings. " 'First, the reason for setting aside the [judgment or order] must *not* be one of the reasons set forth in the five preceding clauses.... Second, the "other reason" advanced must be one that *justifies* relief.' " *Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 632, 688 P.2d 637, 640 (1984) (quoting *Webb v. Erickson,* 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982) (citations omitted) (emphasis in original)). Furthermore, the subsection applies only when our systemic commit-ment to finality of judgments is outweighed by " 'extraordinary circumstances of hardship or injustice.' " *Id.* (quoting *Webb,* 134 Ariz. at 187, 655 P.2d at 11).[2]

■ ¶ 7 In general, a party can obtain Rule 60(c)(6) relief from a judgment entered due to his or her attorney's failure to act only if that failure is legally excusable. *See id.* at 633, 688 P.2d at 641; *see also* ARIZ. R. CIV. P. 60(c)(1). In contrasting cases of inexcusable neglect, the client cannot obtain relief because "the client is charged with the actions and omissions of its attorney." *Mission Ins. Co. v. Cash, Sullivan & Cross,* 170 Ariz. 105, 108, 822 P.2d 1, 4 (1991); *see also Carroll v. Abbott Lab. Inc.,* 32 Cal.3d 892, 187 Cal.Rptr. 592, 654 P.2d 775, 775 (1982) ("[A]s a general rule an attorney's inexcusable neglect is chargeable to the client.").

¶ 8 To permit relief from judgment when an attorney's conduct is so egregious as to constitute abandonment of a client, a small number of courts adopted the "positive misconduct rule." The rule, which apparently had its genesis in *Daley v. County of Butte,* 227 Cal.App.2d 380, 38 Cal.Rptr. 693, 700 (1964), describes an exception to the rule that an attorney's actions bind his client:

> "[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct,* and the person seeking relief is relatively free from negligence.... The exception is premised upon the concept [that] the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship,* and for this reason his negligence should not be imputed to the client."

*Carroll,* 187 Cal.Rptr. 592, 654 P.2d at 778 (citations omitted) (quoting *Buckert v. Briggs,* 15 Cal.App.3d 296, 93 Cal.Rptr. 61, 64 (1971)); *see also* Thomas N. Thrasher and Gary T. Blate, *Positive Misconduct: Excusing an Attorney's Inexcusable Neglect,* 15 W. ST. U.L. REV. 667 (1988).[3] A few federal

---

**1.** The present Rule 60(c) is Arizona's counterpart to Rule 60(b) of the Federal Rules of Civil Procedure, and has been interpreted similarly by Arizona courts.

**2.** The authority on which the dissent relies, *infra* at ¶ 28, does not implicate Rule 60(c) and our commitment to the finality of judgments and therefore provides little guidance in resolving the issue we face.

**3.** In several decisions, Arizona courts have discussed the positive misconduct rule, but have neither accepted nor rejected the rule. *See, e.g.,*

courts also have sparingly applied the exception. *See, e.g., Boughner v. Secretary of Health, Educ. and Welfare,* 572 F.2d 976, 977 (3d Cir.1978) (granting relief because the attorney's "egregious conduct amounted to nothing short of leaving his clients unrepresented"); *United States v. Cirami,* 563 F.2d 26, 34 (2d Cir.1977) (granting relief because the attorney's failure to act was caused by "a mental disorder which induced him to both neglect his duties and to assure his client that he was attending to them"). By and large, however, this exception has found little favor outside California.

¶ 9  Even those jurisdictions that recognize the rule have construed it narrowly. For instance, the California Supreme Court concluded that the positive misconduct rule "should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater heights of incompetence and professional irresponsibility while, nonetheless, maintaining a beatific attorney-client relationship." *Carroll,* 187 Cal.Rptr. 592, 654 P.2d at 779.

¶ 10  With this background, we turn to the reasons we reject Panzino's arguments urging us to adopt the positive misconduct rule in Arizona.

### III.

#### A.

¶ 11  Adopting the positive misconduct rule would require that we abandon our traditional understanding of the relationship between subsections one through five and subsection six of Rule 60(c). We cannot consistently hold that although Rule 60(c)(1) allows relief for judgment only for excusable neglect, Rule 60(c)(6) allows relief from inexcusable neglect in the form of abandonment.

¶ 12  Rule 60(c)(6) provides an equitable catch-all that authorizes a trial court to set aside a final judgment for "any other reason justifying relief" beyond the specific reasons

listed in clauses one through five. *See also Gorman v. City of Phoenix,* 152 Ariz. 179, 181–82, 731 P.2d 74, 76–77 (1987); *Bickerstaff,* 141 Ariz. at 632, 688 P.2d at 640. We have long held, however, that "the reason for setting aside the [judgment or order] must *not* be one of the reasons set forth in the five preceding clauses." *Webb,* 134 Ariz. at 186, 655 P.2d at 10. Because Panzino cannot attribute excusable neglect to her former lawyer, we could grant the relief she seeks only by overturning those decisions that hold subsections one through five are mutually exclusive from subsection six.

¶ 13  Moreover, adopting the positive misconduct rule would result in the irrational holding that Rule 60(c) applies to actions in which attorneys engaged in excusable neglect or to actions in which attorneys completely abandoned their clients, but not to actions involving attorney activities that fall between those two extremes. In *United States v. 7108 West Grand Avenue,* 15 F.3d 632, 634 (7th Cir.1994), the court rejected the same argument made here, explaining:

> We know how to treat both ends of the continuum: negligence and willful misconduct alike are attributed to the litigant. When the polar cases are treated identically, intermediate cases do not call for differentiation. Holding that negligence and wilful misconduct, but not gross negligence, may be the basis of a default judgment would make hay for standup comics. No lawyer would dream of arguing on behalf of a hospital that, although the hospital is liable in tort for staff physicians' negligence and intentional misconduct, it is not liable for their "gross negligence." The argument makes no more sense when presented on behalf of a lawyer or litigant.

¶ 14  Commentators also have criticized the positive misconduct rule as illogical:

> Courts are sensitive to the fact that justice is not always served when clients are required to bear the consequences of attorney misconduct. As a result, there is an older line of cases that holds that when

*Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 688 P.2d 637 (1984); *McKernan v. Dupont,* 192 Ariz. 550, 968 P.2d 623 (1998); *Mission Ins. Co. v. Cash, Sullivan & Cross,* 170 Ariz. 105, 822

P.2d 1 (1991). To the extent those decisions can be read as endorsing the positive misconduct rule, we disapprove them.

an attorney is guilty of gross negligence, and the client is innocent of wrongdoing, relief from a judgment may be had under Rule 60(b)(6) even though this "neglect" is not "excusable" under Rule 60(b)(1).... This line of cases goes against the general rule that conduct arguably within some other subsection of Rule 60(b) should not be grounds for relief under the catch-all provision of Rule 60(b)(6).... This line of cases also is illogical, in that the opponent is made to bear the brunt of unacceptable conduct by an attorney while the party that hired the attorney obtains relief.

12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 60.48[4][b] (3d ed.1997) (internal citations omitted).

¶ 15 Adopting the positive misconduct rule would therefore require not only that we abandon our previous interpretation of Rule 60(c), but also that we abandon it to adopt an illogical replacement.

**B.**

■ ¶ 16 The positive misconduct rule also ignores established principles of third-party agency law. Under general rules of agency, which apply to the attorney-client relationship, "[t]he neglect of the attorney is equivalent to the neglect of the client himself when the attorney is acting within the scope of his authority." *Balmer v. Gagnon*, 19 Ariz.App. 55, 57, 504 P.2d 1278, 1280 (1973); *see also 7108 West Grand Ave.*, 15 F.3d at 634 ("The clients are principals, the attorney

is an agent, and under the law of agency the principal is bound by his chosen agent's deeds."). To avoid that effect, courts adopting the positive misconduct rule reason that an attorney's positive misconduct "obliterates the existence of the attorney-client relationship," *Buckert*, 93 Cal.Rptr. at 64, and that the client, therefore, should not be held responsible for the attorney's actions.

■ ¶ 17 But the abandonment of a principal by an agent does not, absent notice to a third party,[4] affect the agent's authority to bind the principal as to third parties. Because the attorney-client relationship is governed by principles of agency law, the termination of the lawyer's authority does not terminate his apparent authority as to third parties, i.e., adverse litigants. *See* RESTATEMENT (SECOND) OF AGENCY § 124A (1958).[5] Thus, under traditional agency rules, even if an agent abandons a principal, the agent retains apparent authority as to third parties. Although abandonment by a lawyer may afford his client—the injured principal—the right to bring an action against the lawyer, it does not affect the client's responsibility for the actions of his lawyer. Without addressing the merits of her actions, we note only that under agency principles, Panzino's right of action now lies against her former attorney,[6] not against the original defendants.

**C.**

■ ¶ 18 The positive misconduct rule also produces another significant negative

---

4. We note that there is neither an assertion by Panzino nor a suggestion in the record that would allow the inference that defendants knew Appleton's authority had been terminated.

5. "The termination of authority does not thereby terminate apparent authority." RESTATEMENT (SECOND) OF AGENCY § 124A (1958). The comments to this section further explain that "[i]f there was apparent authority previously, its existence is unaffected until the knowledge or notice of the termination of authority comes to the third person...." *Id.* § 124A cmt. a; *see also id.* § 125 ("Apparent authority, not otherwise terminated, terminates when the third person has notice of: (a) the termination of the agent's authority; (b) a manifestation by the principal that he no longer consents."). Thus, the general rule is that the acts of the agent, within the apparent scope of the agent's authority, are binding on the principal as against a third party who had for-

merly dealt with the principal through the agent and who had no notice of the revocation, because such a third party is justified in assuming the continuance of the agency relationship.

6. *See Florida v. Gautier*, 108 Fla. 390, 147 So. 240, 247 (1933) (The agent "cannot withdraw therefrom wantonly and without cause without rendering himself responsible to the principal for any loss that he may sustain therefrom."); *Rudolph v. Andrew Murphy & Son, Inc.*, 121 Neb. 612, 237 N.W. 659, 661 (1931) ("[T]he agent who renounces before the expiration of that period, or before the performance of his undertaking, will be liable to his principal for the damages he may sustain thereby."); *see also* 2A C.J.S. *Agency* § 128 (1972) ("[R]enunciation before the time specified for the termination will subject the agent to the liability for damages sustained by his principal.").

impact in that it undermines the finality of judgments. "As a matter of public policy, a judgment must at some time become final, for if it were not so, there could never be any certainty as to the rights acquired thereunder." *Vazquez v. Dreyfus,* 34 Ariz. 184, 188, 269 P. 80, 81 (1928). Our courts have often recognized the importance of according finality to judgments, particularly in the area of civil judgments. For example, in *Tippit,* 132 Ariz. at 409, 646 P.2d at 294, the court held that "[t]he public policy against the assignment of personal injury claims does not outweigh the compelling societal interest in the finality of judgments." And, in *Rodriguez v. Rodriguez,* 133 Ariz. 88, 89, 649 P.2d 291, 292 (1982), the court said, " '[p]ublic policy requires an end to litigation and even erroneous final judgments must be honored in order to continue the "well-ordered functioning of the judicial process." ' " *Id.* (citations omitted in original) (quoting *In re Marriage of Fellers,* 125 Cal.App.3d 254, 178 Cal.Rptr. 35, 37 (1981)).

¶ 19 Although our trial courts enjoy broad discretion when deciding whether to set aside judgments under Rule 60(c), that discretion "is circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong, Ltd. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir.1992). Parties to a legal action should thereafter be "entitled to rely upon such adjudication as a final settlement of their controversy." *Hines v. Royal Indem. Co.,* 253 F.2d 111, 114 (6th Cir.1958). Permitting relief from judgments entered as a result of an attorney's actions clearly undermines the "undeniable public policy that recognizes the finality of judgments and discourages multiplicitous litigation." *Smith v. Saxon,* 186 Ariz. 70, 74 n. 3, 918 P.2d 1088, 1092 n. 3 (1996).

### D.

¶ 20 We reject the positive misconduct rule for yet another reason that we regard as significant: the rule can encourage lawyers "who have lapsed into carelessness to deliberately expand their neglect to a level of egregiousness as a tactic to save their client's case." *Panzino,* 195 Ariz. at 458, 990 P.2d at 659. The court of appeals dismissed this concern by reasoning that the "narrow availability of relief, the uncertainty of achieving it, and the specter of malpractice lawsuits, professional insurance rate increases, state bar disciplinary proceedings, . . . reputational harm, . . . [and] considerations of professionalism" would encourage attorneys not to abandon a client. *Id.*

¶ 21 We cannot agree that it is acceptable for the courts to approve a rule that encourages, to any degree, abandonment of a client by an attorney, while relying upon other considerations to discourage behavior we regard as unacceptable. We agree with the *Carroll* court that "[w]hen inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." *Carroll,* 187 Cal.Rptr. 592, 654 P.2d at 779. We simply cannot adopt a rule that encourages lawyers, once their misconduct or inattention has made successful representation of a client unlikely, to abandon the client so that the client can later seek relief under Rule 60(c)(6).

### E.

¶ 22 We conclude that adopting the positive misconduct rule would require us to abandon our long-standing interpretation of Rule 60(c) and replace it with an illogical interpretation; require us to ignore established principles of the law of agency; undermine the public policy favoring finality of judgments; and encourage neglectful lawyers to expand their improper behavior to abandonment. The relative benefit to weigh against those harms is slight.

¶ 23 The experience of California has shown that relief is justified on the basis of this rule in very few cases. Since 1964, in *Daley v. Butte County,* 227 Cal.App.2d 380, 38 Cal.Rptr. 693 (1964), California appellate courts have addressed the positive misconduct rule in written opinions approximately thirty times and, during this thirty-six year span, have granted relief only fourteen

times.[7] Those cases constitute a very small proportion of California's appellate decisions. Between 1988 and 1998 alone, California's appellate courts disposed of more than 120,-000 cases by written opinion. *See* JUDICIAL COUNCIL OF CALIFORNIA, ADMINISTRATIVE OF-FICE OF THE COURTS, 1999 COURT STATISTICS REPORT 35 (1999). Thus, the issue has affected a very small percentage of the cases heard.

¶ 24   Although we do not disregard the plaintiff's difficulties in this case, the overall effect of limiting Rule 60(c) relief for a lawyer's actions to those cases involving legally excusable activity appears to be de minimis. Balanced against the substantial harm adopting the positive misconduct rule could cause, any benefit is outweighed by the negative impact of the rule. We therefore decline to adopt the rule as a basis for relief under Rule 60(c).

### IV.

¶ 25   For the foregoing reasons we vacate the opinion of the court of appeals; reverse the trial court's judgment in case number CV 93–16143 and remand for proceedings consistent with this opinion; and affirm the trial court's judgment in case number CV 95–00773.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, and FREDERICK J. MARTONE, Justice.

FELDMAN, Justice, dissenting.

¶ 26   The issue characterized as "positive misconduct" has been adverted to and left open in previous cases. *See ante* ¶ 8 n. 3. In describing the situation as a case of complete abandonment, the court of appeals has finally given the question a proper label. In my view, that court reached the correct result. *See Panzino v. City of Phoenix,* 195 Ariz. 453, 990 P.2d 654 (1999). Agreeing with its analysis, I need respond to only a few of the points made in this court's majority opinion.

¶ 27   Under the facts of this case, the conduct of Panzino's lawyer cannot be considered neglect, excusable or inexcusable. He literally abandoned Panzino, leaving her totally unrepresented. Indeed, she would have been much better off without her lawyer's so-called help. The court of appeals described the situation quite well in stating that the lawyer

> neglected not just one part but the entirety of his client's claim. One may fairly summarize his representation by saying that he filed Panzino's claim against the City, parked it on the inactive calendar, and abandoned it, ignoring the rules, ignoring notices from the court, ignoring even the court administrator's dismissal order, and calendaring no deadlines. : . . . [The lawyer's] neglect of Panzino's claim against the City was egregious; it was "consistent, wide-ranging, and of long duration"; and it " 'amounted to nothing short of leaving his client [ ]unrepresented.' "

195 Ariz. at 460, 990 P.2d at 661 (quoting *Mission Ins. Co. v. Cash, Sullivan & Cross,* 170 Ariz. 105, 109, 822 P.2d 1, 5 (1991)). This being true, I cannot agree with the majority's view that we should look at this case as one of neglect. *See ante* at ¶¶ 3 and 7. I agree that because Rule 60(c), Ariz.R.Civ.P., permits relief for excusable neglect, we cannot grant relief from a judgment for inexcusable neglect. But we deal here with complete abandonment, a different matter than han-

---

7. Of these fourteen grants of relief, eight occurred before the 1988 amendment to section 473, which is California's counterpart to our Rule 60(c)(6), one occurred between 1989 and 1992, and five since 1993. We also note that California has twice amended section 473 of its Code of Civil Procedure, thus codifying the positive misconduct rule. In 1988, the amendment to section 473 granted relief from *default judgments* only, when accompanied by an attorney's sworn affidavit attesting to his or her "mistake, inadvertence, surprise or neglect," and created

"a limited exception to the court's discretionary power." *Billings v. Health Plan of America,* 225 Cal.App.3d 250, 275 Cal.Rptr. 80, 83–84 (1990) (emphasis added). The 1992 Amendments, which took effect January 1, 1993, expanded this exception to apply to *defaults and dismissals* caused by attorney "mistake, inadvertence, surprise, or neglect." CAL. CIV. PROC. § 473(b) (emphasis added); *see also Tustin Plaza Partnership v. Wehage,* 27 Cal.App.4th 1557, 33 Cal.Rptr.2d 366, 369 (1994). Arizona, however, has made no such change to our existing rules.

dling the case in a negligent or even grossly negligent manner.

¶ 28   For the same reason, I cannot agree with the majority's view that the general rules of agency require or should require the lawyer's acts or omissions to be charged against his client. This lawyer ceased representing his client and abandoned his role as her agent. He left Panzino turning in the wind, uninformed, unrepresented, and helpless. As the majority correctly describes it, the lawyer had abandoned Panzino and was no longer acting on her behalf. The majority holds, nevertheless, that Panzino remains responsible "for the actions of [her] lawyer." *Ante* at ¶ 18. But that result is inconsistent with the rule that a client is not bound by his lawyer's unauthorized actions when those actions affect and impair the client's substantial rights. *See Garn v. Garn,* 155 Ariz. 156, 160, 745 P.2d 604, 608 (1987) (attorney has no implied or apparent authority to stipulate to settlement without client's consent).

¶ 29   Finally, I do not agree that adoption of the positive misconduct rule would have any significant effect on the finality of judgments, given the existing provisions of Rule 60(c), which, not too infrequently, permit relief from final judgments. As the majority

itself notes, the additional cases in which the positive misconduct rule has been applied are limited to rather extraordinary facts and are very few and far between. *See ante* at ¶ 17 n. 6 and ¶ 24.

¶ 30   Thus, I would agree with the court of appeals that when the facts show total abandonment of a client, Rule 60(c)(6) allows equity to intervene and grant relief. That relief, of course, should not be granted if the client's actions have contributed to the situation in any way or if the grant of relief would cause any significant prejudice to the opposing party. *See Seacall Dev., Ltd. v. Santa Monica Rent Control Board,* 73 Cal.App.4th 201, 86 Cal.Rptr.2d 229 (1999). In either of those events, principles of equity would militate against granting relief. This record establishes neither factor; nor has the city's response made such claim. I must therefore respectfully dissent.