[No. B122382. Second Dist., Div. Seven. June 30, 1999.]

SEACALL DEVELOPMENT, LTD., Plaintiff and Appellant, v. SANTA MONICA RENT CONTROL BOARD, Defendant and Respondent.

## COUNSEL

Law Offices of Gordon P. Gitlen and Gordon P. Gitlen for Plaintiff and Appellant.

Doris M. Ganga for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—Seacall Development, Ltd. (Seacall) appeals from an order denying its motion to be relieved from a judgment of dismissal for failure to prosecute. We reverse and direct the trial court to grant the motion.

### FACTS AND PROCEEDINGS BELOW

Seacall, a landlord, requested rent increases from respondent Santa Monica Rent Control Board (Board) for 11 of its condominium units.

In September 1994 Seacall, displeased with the amounts of the increases the Board allowed, filed a petition for a writ of administrative mandate. Seacall was represented before the Board and on the petition by Attorney Brenda Barnes.

In September 1995, a year after filing the petition, Barnes wrote to the Board requesting it to prepare the administrative record.

Nearly a year later, in August 1996, Barnes wrote to the Board requesting the hearing portion of the record be provided to her on a computer disk. In that letter she stated her goal was to obtain a decision on the writ petition by the end of 1996.

In September 1996, two years after the petition was filed, the trial court sent Barnes an order to show cause why the case should not be dismissed for failure to prosecute citing, inter alia, Code of Civil Procedure section 583.420 and local rules of court.

A hearing on the order to show cause was set for November 5, 1996. Barnes did not appear on the date set for hearing. The court on its own motion continued the matter to November 27, 1996, believing the order to show cause may have been sent to the wrong address. A notice of the new hearing date was directed to Barnes at a different address.

Barnes did not appear for the rescheduled hearing and, on November 27, 1996, the trial court dismissed Seacall's action and directed Barnes to give notice. She did not do so.

On January 17, 1997, Barnes filed a notice of change of address with the court.

On March 3, 1997, Seacall substituted Gordon P. Gitlen as its counsel in place of Barnes. Barnes resigned from the State Bar the same day.

Between March and December 1997, Seacall's new attorney, Gitlen, engaged in settlement negotiations with the Board over the subject rent increases.

On or about January 22, 1998, while attempting to set a date for a hearing on the petition, Gitlen and the Board's counsel learned for the first time the action had been dismissed in November 1996.

On February 10, 1998, Seacall filed a motion for relief from dismissal on the ground Barnes's positive misconduct should not be imputed to Seacall.

The trial court denied this motion and Seacall filed a timely appeal.

### DISCUSSION

██ The only issue before us on appeal is whether the trial court erred in refusing to set aside the order of dismissal on the ground Seacall had been "abandoned" by its attorney, Barnes.[1]

Without doubt Barnes acted negligently in handling Seacall's case. ██ As a general rule, however, the negligence of an attorney is imputed to

---

[1] In its opening brief on appeal, Seacall argues the minute order setting a new date for hearing on the order to show cause lacked a proof of service and therefore the dismissal order

the client. (*Carroll* v. *Abbot Laboratories Inc.* (1982) 32 Cal.3d 892, 895, 898 [187 Cal.Rptr. 592, 654 P.2d 775] (*Carroll*).)

California courts recognize an exception to this rule in those cases " 'where the attorney's neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence.' " (*Carroll*, *supra*, 32 Cal.3d at p. 898, italics omitted.) This exception is premised on the concept such extreme misconduct " 'obliterates the existence of the attorney-client relationship' " (*ibid.*, italics omitted) and for this reason the client has no attorney from whom negligence can be imputed. Various formulations of this exception can be found throughout the *Carroll* opinion. (*Id.* at pp. 898-900.) They all boil down to this: Imputation of the attorney's neglect to the client ceases at the point where "abandonment of the client appears." (*Id.* at p. 900.)

What constitutes "abandonment" of the client depends on the facts in the particular action. Even where abandonment is shown, however, the courts also consider equitable factors in deciding whether the dismissal of an action should be set aside. These factors include the client's own conduct in pursuing and following up the case (*Aldrich* v. *San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 739 [216 Cal.Rptr. 300] (*Aldrich*)), whether the defendant would be prejudiced by allowing the case to proceed (*Fleming* v. *Gallegos* (1994) 23 Cal.App.4th 68, 74-75 [28 Cal.Rptr.2d 350] (*Fleming*)) and whether the dismissal was discretionary or mandatory (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 394 [38 Cal.Rptr. 693] (*Daley*)). The courts must also balance the public policy favoring a trial on the merits against the public policies favoring finality of judgments and disfavoring unreasonable delays in litigation (*id.* at p. 390) and the policy an innocent client should not have to suffer from its attorney's gross negligence against the policy a grossly incompetent attorney should not be relieved from the consequences of his or her incompetence. (*Fleming*, *supra*, 23 Cal.App.4th at p. 75.)

 The facts in the present case plainly show Barnes abandoned her client. And, although the client possibly was not as vigilant as it should have

---

is void for want of notice. This argument, raised for the first time on appeal, will not be considered.

In its reply brief, the Board argues this appeal should be dismissed because Seacall sold eight of the eleven condominium units while the action was pending and, as a result, this appeal is "virtually moot." While an appellate court generally will not review questions that are moot (*Keefer* v. *Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856]), we are unaware of any authority for the doctrine of "virtual mootness" urged by the Board. Therefore, we proceed to decide the appeal.

been, we find the reasons for setting aside the dismissal clearly outweigh the reasons for letting it stand.

Barnes did even less in representing Seacall than other attorneys found to have abandoned their clients. In *Daley*, for example, the attorney filed the complaint, filed a memorandum to set the case for trial and signed a stipulation to amend the pleadings (albeit after a lengthy delay). (227 Cal.App.2d at pp. 384-385.) In *Fleming*, the attorney filed the complaint, recorded a lis pendens, answered the cross-complaint and conducted limited discovery. (23 Cal.App.4th at pp. 70-71.) In the present case, Barnes filed the petition for writ of mandate and ordered the administrative transcript. She took no further action to prosecute her client's case. Barnes substituted herself out of the case de facto long before she did so de jure.

If there is a weakness in Seacall's motion for relief, it is in Seacall's failure to contact Barnes in the two years between the filing of the action and its dismissal. In contrast, the client in *Daley* made 12 to 15 attempts to contact her attorney (227 Cal.App.2d at p. 386); in *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, 350 [66 Cal.Rptr. 240], the client had "numerous conversations" with his attorney concerning the lawsuit; and in *Fleming* the court's opinion shows the client spoke with both her derelict attorneys about the progress of her case although it does not indicate how often (23 Cal.App.4th at p. 71).

Nevertheless, we do not believe Seacall's failure to initiate contact with Barnes in the two-year period is a sufficient ground for denying Seacall equitable relief from Barnes's positive misconduct. As the court pointed out in *Daley*, the only thing clients generally know about the prosecution of lawsuits is "that several years frequently elapse between the commencement and trial of lawsuits." (227 Cal.App.2d at p. 392.) "Certainly," the court added, ". . . it is unrealistic to expect a lay person to know of statutory deadlines and two-year dismissal statutes." (*Ibid.*) The court concluded, therefore, absent actual notice to the client of the attorney's misconduct "two years of reliance on the attorney was understandable and justifiable." (*Id.* at p. 393; and see *Aldrich, supra,* 170 Cal.App.3d at pp. 739-740 [granting relief even though "plaintiff did not assiduously seek out his attorney"].)

More significant than the client's failure to act *before* being put on notice of dismissal is the client's diligence *after* receiving notice. (*Aldrich, supra,* 170 Cal.App.3d at p. 740; *Orange Empire Nat. Bank v. Kirk, supra,* 259 Cal.App.2d at p. 355.) Here, it is undisputed Seacall's new attorney first learned of the dismissal on January 22, 1998, and filed a motion for relief

just a few weeks later on February 10th. Seacall acted diligently under the circumstances. (Cf. *Orange Empire Nat. Bank, supra,* 259 Cal.App.2d at p. 355 [client found to have acted diligently even though approximately six months elapsed between notice of default judgment and motion for relief].)

The Board properly refrains from contending it would be prejudiced if the dismissal was set aside. In this case the prejudice would be virtually nil because there are no witnesses who might disappear or whose memories might fade. The issues before the trial court on a petition for administrative mandamus are purely legal and governed by the administrative record. (Code Civ. Proc., § 1094.5, subd. (b).) Furthermore, we note the order to show cause re dismissal issued on the trial court's own motion, not on the motion of the Board. Thus it does not appear the Board was particularly concerned about the two-year delay in bringing the petition on for hearing.

We also find it significant this case was dismissed under the discretionary two-year time period of Code of Civil Procedure section 583.420. (See *Fleming, supra,* 23 Cal.App.4th at p. 70 [concluding the neglect of plaintiff's attorneys "should not be imputed to her under the discretionary dismissal statutes"].) As the court explained in *Daley:* "The two-year period is not an arbitrary limit, but simply a general guide to determine whether 'want of prosecution' appears and, if so, whether the power to dismiss should be used in view . . . of the entire situation." (227 Cal.App.2d at p. 394.) Thus the public policy against delay in prosecution is not as strong in this case as in, for example, a case dismissed under the mandatory five-year rule (Code Civ. Proc., § 583.310).

The Board counters this public policy argument with one of its own. It points out Seacall's motion to set aside the dismissal was not filed within the six-month period allowed by Code of Civil Procedure section 473 during which " 'there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court.' " (*Rappleyea* v. *Campbell* (1994) 8 Cal.4th 975, 982 [35 Cal.Rptr.2d 669, 884 P.2d 126].) Rather the motion was filed more than a year after the dismissal date at which time " 'there is a strong public policy in favor of the finality of judgments.' " (*Ibid.*)

We do not find this argument persuasive. While it is true the motion for relief in *Daley* was made under Code of Civil Procedure section 473 (227 Cal.App.2d at p. 383) the successful motions in *Orange Empire Nat. Bank* and *Aldrich,* for instance, were not based on section 473 but on the court's inherent equity power. (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 352; *Aldrich, supra,* 170 Cal.App.3d at p. 736.)

Finally, we are aware of the tension between a policy which punishes the innocent client for the sins of his or her attorney and a policy which, in a

sense, rewards the attorney for his or her incompetence. (*Fleming, supra,* 23 Cal.App.4th at p. 75.) The Supreme Court was aware of this tension in *Carroll* and could have disapproved the holdings in cases such as *Daley* and *Orange Empire Nat. Bank.* Instead it approved those cases with the caveat the exception to the rule of imputed negligence "should be narrowly applied." (*Carroll, supra,* 32 Cal.3d at p. 900.)

The narrow application called for in *Carroll* is achieved by requiring a "total failure on the part of counsel to represent the client" (*Carroll, supra,* 32 Cal.3d at p. 900) coupled with an absence of fault and due diligence on the part of the client (*Daley, supra,* 227 Cal.App.2d at pp. 392-395), absence of prejudice to the defendant (*Fleming, supra,* 23 Cal.App.4th at pp. 74-75), and a careful weighing of the public policies favoring a trial on the merits and protecting the innocent client versus those favoring finality of judgments, avoiding unreasonable delay in prosecution and holding grossly incompetent attorneys responsible for their incompetence. (*Id.* at p. 75.)

The application of these factors to the present case convinces us the trial court erred in refusing to set aside the judgment of dismissal. After filing the action and requesting the administrative record, Barnes sat on the case and did nothing to represent Seacall. Once Seacall discovered the case had been dismissed it moved within a few weeks to set aside the dismissal. No prejudice to the Board would result from the granting of that motion. The fact the dismissal was not mandatory but discretionary also weighs in favor of granting relief. The only factors weighing against relief are Seacall's apparent failure to press Barnes to act during the two-year period following the filing of the suit and the policy against conferring an undeserved benefit on an incompetent attorney. However, as we explained above, Seacall's failure to implore Barnes to get on with the case was not unreasonable under the circumstances. Moreover, because Barnes is no longer practicing law, she will not be tempted by her escape from potential malpractice liability here to rise to even greater heights of incompetence and professional irresponsibility. (See *Carroll, supra,* 32 Cal.3d at p. 900.)

## DISPOSITION

The order denying the motion to vacate the dismissal is reversed and the cause is remanded to the trial court with directions to grant the motion and vacate the dismissal. Each party to bear its own costs on appeal.

Lillie, P. J., and Woods, J., concurred.