Filed 2/8/24  Brady v. Wu CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANDY J. BRADY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LIAN WU,<br><br>Defendant and Appellant. | H050657<br>(Santa Clara County<br>Super. Ct. No. 22CH010668) |
| MANDY J. BRADY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LIAN WU,<br><br>Defendant and Appellant. | H050719<br>(Santa Clara County<br>Super. Ct. No. 22CH010668)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 11, 2024, be modified as follows:

The case title in the opinion is modified to track the case title in this order.

There is no change in the judgment.

_____
GROVER, ACTING P.J.

_____
LIE, J.

_____
BROMBERG, J.

*Brady v. Wu*
H050657
H050719

Filed 1/11/24  Brady v. Wu CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANDY J. BRADY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LIAN WU,<br><br>    Defendant and Appellant. | H050657 & H050719<br>(Santa Clara County<br>Super. Ct. No. 22CH010668) |

Mandy J. Brady and Lian Wu are neighbors whose unneighborly relations led to cross-requests for civil harassment restraining orders.  When Brady and her counsel appeared for trial but Wu and her counsel did not, the trial court granted Brady's request for a restraining order and denied Wu's cross-request.  Wu did not appeal these rulings.

As the prevailing party, Brady moved for an award of attorney fees under Code of Civil Procedure section 527.6, subdivision (s) and, alternatively, a prior settlement agreement.[1]  Wu moved to set aside the restraining order and the denial of her cross-request pursuant to section 473, subdivision (b) on the basis of attorney mistake, inadvertence, surprise, or neglect.  The trial court denied Wu's motion and granted Brady's in part, awarding a lesser fee than requested.  Wu appeals from both orders, and

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Brady cross-appeals from the trial court's partial denial of her fee motion. We affirm both orders.

## I. BACKGROUND

Brady initiated this action by filing a request for a civil restraining order and Wu responded with a cross-request. We take the following facts from their applications and evidentiary filings in support of their petitions.

Brady and her husband Joshua Rosenberg own and occupy a residential property on Felter Road in rural San Jose. Their property shares a driveway with two others, one of which is owned and occupied by Wu. Pursuant to a 2016 settlement agreement resolving Brady and Rosenberg's civil complaint against the then-owners of Wu's property and a related cross-complaint, Brady has an easement burdening what is now Wu's property to access a well there, and the parties are to share the costs of maintaining the shared driveway.

Disagreement between Brady and Wu over the settlement agreement resulted in an arbitration award in Brady's favor and court confirmation of that award less than a week before the eruption of hostilities on February 23, 2022, the primary basis for the restraining order proceeding that eventually occasioned the instant appeal and cross-appeal.[2]

On that date, the parties agree that a confrontation between Wu and Brady occurred at Wu's home, with one other member of Wu's household present, after Brady discovered the gate to the well padlocked. Wu at one point was armed with an air gun. Brady called her attorney to report that Wu "had a gun on her." Wu called neighbors Anna and Jim Overholt. Law enforcement arrived after the confrontation ended, took witness statements, and inspected Wu's air gun and the phone Brady used at the scene.

_____

[2] In their competing requests, the parties alleged various other instances of harassment predating the events of February 23.

The parties disagree about the details of their confrontation. Brady claims Wu shoved her down some steps with the barrel of the air gun; Wu claims Brady fell while walking backwards during the argument. Brady claims that Anna Overholt aided and abetted Wu in preventing her from leaving; Wu, backed by Jim Overholt, claims Brady refused to leave Wu's property. Brady claims Wu stomped on her phone; Wu claims she merely tried to take the phone away to prevent Brady from recording while trespassing.

Both parties secured temporary restraining orders. At the initial hearing, with both parties and their counsel present, the trial court scheduled the trial to commence at 9:00 a.m. on June 13, 2022, a Monday. The court directed the parties to submit proposed orders extending the temporary restraining orders to that time.

Wu's trial counsel, Ray A. Schumann, was during the relevant time period using a van as his mobile office. On the day that Schumann intended to "follow-up on [Wu's] file," during a week that he was already overwhelmed with work, the van broke down. Schumann spent "dozens" of hours taking the van in for repair and obtaining a replacement vehicle.

Schumann did not submit a proposed order extending the temporary restraining order in Wu's favor. However, four days before trial, Brady did serve several documents on Wu through Schumann, including two versions of a proposed order indicating the trial date and time.

Schumann met with Wu on the eve of trial. During the meeting, Schumann decided he could no longer represent Wu. Rather than informing the court or opposing counsel himself, he told Wu to appear for the trial, tell the court herself that she was no longer represented by counsel, and request a continuance to retain new counsel. Schumann told Wu the trial was to begin at 1:30 p.m.

Wu did not appear in court for trial at 9:00 a.m. By 1:30 p.m., the proceedings had concluded: the minutes of the morning session reflect that Brady, sworn as a witness, presented evidence "by way of offer of proof," and the trial court granted Brady's request

3

for a civil harassment restraining order, denying Wu's cross-request for failure to appear. Brady's counsel promptly sent a copy of the proposed restraining order to Schumann. Schumann responded a week after the trial, asserting objections on Wu's behalf, but the trial court signed the restraining order the same day. Wu did not appeal from the entry of the civil harassment restraining order against her or the denial of her own request.

Brady moved for attorney fees. At the time the fee motion was filed, Brady was seeking $25,960. At the time of the hearing on Brady's fee motion and Wu's later-filed section 473 motion, that figure had escalated to $56,280.

After the fee motion had been filed, Wu, with the assistance of new counsel, filed a motion to set aside both the restraining order against her and the denial of her cross-request pursuant to section 473, subdivision (b). Her motion was supported by a declaration from Schumann explaining the circumstances surrounding his and Wu's failure to appear for trial. Schumann attributed his mistaken belief regarding the trial time to a calendaring error—he "mistakenly recorded the incorrect time in [his] calendar due to [his] belief that the time for the hearing was at 1:30 p.m. and due to [his] failure to confirm the time before calendaring it." Schumann allowed that he would have identified the error if he had reviewed any of Brady's pretrial filings, which were served on him, or his own case file, but explained that due to the crush of work and the problems with his van he had failed to review those documents.

The trial court held a combined hearing on both motions. In separate written orders, the trial court denied Wu's section 473 motion and granted Brady's fee motion in part—awarding $38,420. Wu timely appealed both rulings. Brady timely cross-appealed the partial denial of her fee request. We consider the appeals together.

## II. DISCUSSION

### A. *Jurisdiction*

We first reject Brady's claim that we lack jurisdiction to consider Wu's appeal. Brady contends that this action, which she initiated, was "seemingly" filed as a limited

4

civil action; under this theory, Wu's appeal would be both untimely under the shorter deadline to notice an appeal in a limited civil case and more properly addressed to the superior court's appellate division. Section 86, subdivision (a)(8) limits the availability of injunctive relief in a limited civil case to temporary restraining orders and preliminary injunctions, whereas "[t]he ultimate relief provided for by the civil harassment statute is in the nature of permanent injunctive relief." (*Williams v. Superior Court* (2021) 71 Cal.App.5th 101, 108, fn. 4, citing *Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 275.) Brady bases her jurisdictional ambivalence on the parties' selection of the checkbox "Limited (Amount demanded is $25,000 or less)" on the civil case coversheet with which first Brady and then Wu filed their respective petitions, but Brady cites no authority for the proposition that a civil case coversheet, rather than section 86, subdivision (a)(8), would be dispositive here. We therefore see no jurisdictional bar to our reaching the merits.

**B.      *Wu's Motion to Strike and Request for Sanctions***

We next deny Wu's motion to strike matter from Brady's opening brief and appendix, Wu's motion for sanctions, and the cross-request for sanctions Brady included in her opposition brief. (See Cal. Rules of Court, rules 8.124(b)(3)(A) & (g), 8.204(a)(1)(C), 8.276.)[3]

We reject Wu's notion that the appellate record is limited to those documents filed with the superior court in connection with the operative motions, where the trial court—at the request of both parties—considered the entire case record in ruling on the underlying motions. In particular, the competing allegations of harassment were at least marginally relevant to the trial court's assessment of Brady's fee request. Wu's counsel in fact attempted to argue the facts underlying the restraining order request in opposing Brady's motion for fees. As to Brady's inclusion in her appendix of postorder filings alleging

---

[3] Undesignated references to the rules are to the California Rules of Court.

Wu's violation of the restraining order, these are ostensibly relevant to Brady's invocation of the disentitlement doctrine as an alternative basis to affirm the trial court's denial of Wu's motion. Finally, we disregard a document that the clerk of court rejected for filing after Wu served it on Brady.

Turning to Wu's complaint about the "vitriolic ad hominem" language of Brady's briefing, we note that neither party's gratuitous castigation of the other or their counsel advances our consideration of the merits. We further decline Wu's invitation to identify and strike from Brady's brief all statements about the underlying allegations of harassment that are insufficiently documented by appropriate and accurate citations to the record. Our review of the trial court's rulings will not turn on which neighbor did what to the other. (See also rule 8.204(a)(1)(C) & (e)(2).)

As for Brady's request for sanctions, Brady has cited no authority supporting her inclusion of a competing request for sanctions in opposition to Wu's motion, rather than in a noticed motion of her own. (Cf. rule 8.276(a)–(b) [setting forth procedures for a party to request sanctions by noticed motion].) Moreover, because this court has never given notice that it was considering imposing sanctions (rule 8.276(c)), Brady did not have leave to file opposition to Wu's argument for sanctions (rule 8.276(d)).

In denying both parties' requests for sanctions, we invite counsel to reconsider the prudence of their rhetorical tactics where it is undisputed that their clients are already embroiled in a high level of conflict.

## C. *Motion to Set Aside*

Wu contends that the trial court erred because: (1) Wu was entitled to mandatory relief under section 473 from both the restraining order in Brady's favor and the denial of Wu's cross request; (2) Wu was entitled to discretionary relief under section 473 because the adverse rulings were caused by an excusable calendaring error; and (3) Wu was

6

entitled to discretionary relief because the adverse rulings resulted from abandonment by her trial counsel.[4]

First, the trial court properly denied mandatory relief because such relief is inapplicable—the posttrial restraining order in Brady's favor was not a "default judgment" and the posttrial denial of Wu's request for a restraining order was not a "dismissal" within the meaning of the mandatory relief provision. Second, the trial court acted within its discretion in finding that the series of errors committed by Wu's former counsel, culminating in Wu and her counsel's nonappearance at trial, were inexcusable. Third, Wu forfeited her abandonment argument by failing to raise it in the trial court. Accordingly, we will affirm the trial court's denial of Wu's motion to set aside.

## 1.    *Section 473*

"The court may, upon any terms as may be just, relieve a party or . . . her legal representative from a judgment, dismissal, order, or other proceeding taken against . . . her through . . . her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) " 'A party who seeks [discretionary] relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to [the] client and may not be offered by the latter as a basis for relief.' [Citation.] In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error.[]' [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.] 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is

_____

[4] Wu also argues that Brady inequitably sought to take advantage of her prior counsel's mistake. However, Wu does not appear to contend that this supplies an independent ground for relief.

7

not therefore excusable.  To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.'  [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 (*Zamora*).)  " 'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.' [Citation.]" (*Id.* at p. 257.)

But where an attorney attests by sworn affidavit in a timely application for relief to the attorney's "mistake, inadvertence, surprise, or neglect," section 473 *requires* the trial court to grant relief from " 'any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.' " (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1414 (*Huh*); see also *Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 491–492 (*Gee*).)

"That section 473(b) restricts the availability of mandatory relief to only a 'default judgment or dismissal' is significant.  . . . [¶] . . . [V]arious Courts of Appeal have concluded the mandatory relief provision is intended to reach only those dismissals that are 'procedurally equivalent to a default.'  [Citations.]  '[A] default judgment is entered when a defendant fails to appear, and, under section 473, relief is afforded where the failure to appear is the fault of counsel.'  [Citation.]  Similarly, 'a dismissal may be entered where a plaintiff fails to appear in opposition to a dismissal motion, and relief is afforded where that failure to appear is the fault of counsel.'  [Citation.]" (*Jackson v. Kaiser Foundation Hospitals, Inc.* (2019) 32 Cal.App.5th 166, 174–175; see also *The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 998–1002 (*Urban Wildlands*).)

Although mandatory relief thus applies across a narrower range of orders than does discretionary relief, " '[t]he range of attorney conduct for which relief can be

8

granted in the mandatory provision is broader than that in the discretionary provision, and includes inexcusable neglect.' [Citation.] The purposes of the mandatory relief provision [are] to promote the determination of actions on their merits, to relieve innocent clients of the burden of the attorneys' fault, to impose the burden on the erring attorney, and to avoid the precipitation of additional litigation in the form of malpractice suits. [Citation.]" (*Gee*, *supra*, 6 Cal.App.5th at p. 492; see also *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 428.) Where "[t]he applicability of the mandatory relief provision does not turn on disputed facts and presents a pure question of law," our review is de novo. (See *Gee*, *supra*, 6 Cal.App.5th at p. 485.)

## 2. *Mandatory Relief*

Wu contends that the trial court's entry of a civil harassment restraining order against her is effectively a default judgment and the trial court's denial of her cross-request for a civil harassment restraining order is effectively a dismissal, such that both actions are subject to the mandatory relief provision. We do not construe section 473, subdivision (b)'s reference to a "dismissal" and "default judgment" to make mandatory relief available here, where the court granted relief upon a duly noticed trial in an action at issue.

"There are two lines of cases concerning the interpretation of 'dismissal' and 'default judgment' in section 473, subdivision (b). The first line of cases holds that 'dismissal' and 'default judgment' mean only that, and should not be expanded to include other judgments. (See, e.g., *Huh*[, *supra*,] 158 Cal.App.4th [at p.] 1418; *English* [*v. IKON Business Solutions, Inc.* (2001)] 94 Cal.App.4th [130,] 138 [(*English*)].) The second [much less numerous] line of cases offers a broader definition and applies the mandatory relief provisions to judgments that are the procedural equivalents of defaults, default judgments, or dismissals. [Citation.]" (*Urban Wildlands*, *supra*, 10 Cal.App.5th at p. 998; compare *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 601–602 (*Yeap*) [applying mandatory relief provision to vacate judgment following arbitration where counsel's

9

failure to properly calendar arbitration resulted in client's failure to appear at arbitration] with *Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 457–459 (*Hossain*) [concluding that *Yeap* was wrongly decided].)

We find persuasive the reasoning of *English* and its progeny: " ' "It is not an appellate court's task, nor, indeed, its prerogative, when interpreting a statute, to extend the scope of the statute to encompass situations 'analogous' to those the statute explicitly addresses. Rather, an appellate court's task is simply to determine what the Legislature meant by the words it used, relying first and foremost on the words themselves." [Citation.] Where the statutory language is unambiguous, its plain meaning controls. [Citations.] Here, the statutory language is unequivocal. "As expressly worded, section 473(b) applies *only* to relief sought in response to defaults, default judgments, or dismissals." [Citation.]' " (*Urban Wildlands*, *supra*, 10 Cal.App.5th at p. 1000, quoting *Huh*, *supra*, 158 Cal.App.4th at p. 1417; see also *Shayan v. Spine Care & Orthopedic Physicians* (2020) 44 Cal.App.5th 167, 170–171; *Hossain*, *supra*, 157 Cal.App.4th at pp. 457–459.) Accordingly, we decline to follow the minority view of cases such as *Yeap*, *supra*, 60 Cal.App.4th at page 601 (applying mandatory provision where judgment "was analogous to a default").[5]

_____

[5] Wu argues that, as a matter of stare decisis, we are bound by the opinions of another intermediate appellate court (on her preferred side of the split of authority) where Supreme Court review of the former opinion was requested and denied. Principles of stare decisis call on us to follow the decision of another district court of appeal, absent good reason to disagree, but we are not bound to follow another decision where we disagree, respectfully, with its rationale. (*People v. Kim* (2011) 193 Cal.App.4th 836, 847.) Although the denial of a petition for review may have some significance as to the Supreme Court's views, "denial of a hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of" the Supreme Court. (*DiGenova v. State Bd. of Ed.* (1962) 57 Cal.2d 167, 178; see also *Cole v. Rush* (1955) 45 Cal.2d 345, 351, fn. 3 [denial of petition for review "may mean no more than that a ground which we deem adequate . . . for ordering a hearing has not been brought to our attention"], overruled on other grounds by *Vesely v. Sager* (1971) 5 Cal.3d 153.)

Consistent with this line of authority, "a 'default' means only a defendant's failure to answer a complaint, and a 'default judgment' means only a judgment entered after the defendant has failed to answer and the defendant's default has been entered." (*Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 321.)  A judgment entered following a trial conducted in a defendant's absence is not a default judgment.  (*Ibid*.)  For example, in *Noceti v. Whorton* (2014) 224 Cal.App.4th 1062, the defendant moved for judgment after plaintiffs and their counsel failed to appear at trial due to a calendaring error.  (*Id*. at p. 1067.)  After reviewing the entire file, the trial court granted the motion.  (*Id*. at pp. 1067–1068.)  The appellate court held that "the judgment was not tantamount to a 'dismissal' within the meaning of [the] mandatory provision—it was a judgment for defendant following an uncontested trial."  (*Id*. at p. 1068.)  Likewise, in *Urban Wildlands*, although the parties briefed the merits, a California Environmental Quality Act plaintiff never lodged the administrative record.  (*Urban Wildlands*, *supra*, 10 Cal.App.5th at p. 995.)  The trial court having found in the defendant's favor and entered judgment (*ibid*.), the appellate court deemed the result a "trial of the merits" where the plaintiff "failed to present sufficient evidence to meet its burden of proof—it never lodged the administrative record."  (*Id*. at p. 1001; see also *English*, *supra*, 94 Cal.App.4th at pp. 148–149 [a dismissal is a removal of the plaintiff's application for relief rather than an adjudication of that application based on undisputed facts before the court]; *Huh*, *supra*, 158 Cal.App.4th at p. 1416.)

Here, both parties having appeared in the action, both were afforded actual notice of the trial date.  Upon Wu's failure to appear and on the strength of Brady's presentation, the trial court granted Brady's request for a restraining order on the merits and denied Wu's cross-request based on Wu's failure to appear and carry her burden of proof.  The trial minutes and the trial court's comments at the eventual hearing on Wu's section 473 motion indicate that Brady was sworn at the hearing and "verified" her offer of proof, such that, in the trial court's view, it "did hear the case on the merits," however

11

briefly. We see no meaningful distinction between the abbreviated merits hearing here and the one at issue in *Urban Wildlands*, where the plaintiff's failure to lodge the administrative record was dispositive. (*Urban Wildlands*, *supra*, 10 Cal.App.5th at pp. 995, 1001.)

### 3. *Discretionary Relief*

Wu asserts that the trial court granted Brady's request for a restraining order and denied Wu's cross-request for a restraining order because Wu and her counsel failed to appear for the trial. Further, Wu asserts that she failed to appear for the trial because her counsel calendared that trial for the wrong time. Wu contends that the calendaring error is excusable neglect, for which the trial court's denial of relief was an abuse of discretion. To the extent counsel's neglect was inexcusable, Wu contends that she should be relieved from the adverse rulings because her former counsel abandoned her. We find no abuse of discretion in the trial court's determination that Wu's prior counsel committed inexcusable neglect, and we further conclude that Wu forfeited her claim of abandonment.

### a. *Excusable Neglect*

Wu's exclusive focus on Schumann's calendaring error disregards the broader "series of unfortunate acts" the trial court found to have inexcusably "culminated in an adverse ruling against" Wu. Schumann and Wu were present in court when the trial was set, and counsel for both parties agreed to the date and time. Although the trial court instructed counsel for both sides to submit proposed orders extending the respective temporary protective orders to the date of the next hearing, Schumann failed to submit the required protective order. On deciding he would no longer represent Wu, Schumann did not file a substitution of attorney, alert opposing counsel to his withdrawal, or seek leave of court to withdraw. The court allowed that Schumann's calendaring error would have resulted in a belated appearance even if Schumann had attempted to withdraw at what he believed to be the time of trial, but reasoned that Schumann would have

12

discovered his calendaring error if he had complied with his obligation to submit his proposed order or notified opposing counsel of his decision to withdraw. The court found that this series of errors would not have been committed by "a prudent person similarly situated." The trial court accordingly examined not only the initial calendaring error but the extent to which counsel's subsequent failures prevented the timely discovery of his error—counsel's failure to prepare or submit the proposed order extending the temporary restraining order, and counsel's failure to notify opposing counsel or the court of his 11th-hour decision to withdraw. For those reasons, the trial court deemed discretionary relief inappropriate.

Wu's citation to *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116 (*Comunidad*) misses the mark. In *Comunidad*, "[i]t [could not] be disputed that Comunidad's counsel was diligent in prosecuting this case" notwithstanding an error in calendaring the deadline for requesting a hearing under Public Resources Code section 21167.4. (*Id.* at p. 1133.) In contrast with *Huh*, counsel's error was "an isolated mistake in an otherwise vigorous and thorough presentation of [the client's] claims." (*Id.* at p. 1135; see also *id.* at p. 1134 [distinguishing "a series of errors resulting from disorganization" or a failure of diligence in rectifying the error].) In *Huh*, the attorney failed to respond to a summary judgment motion because the attorney " 'was overwhelmed and disorganized' " and placed the motion papers in a box of completed items. (*Huh*, *supra*, 158 Cal.App.4th at p. 1422, fn. 5, & p. 1423 [holding that the record supported an implied finding of inexcusable neglect]; see *Comunidad*, *supra*, 219 Cal.App.4th at p. 1135 [distinguishing *Huh*].)

Here, the facts are analogous to *Huh*. By his own account, Schumann was so overwhelmed and disorganized that he failed to prepare for trial or even to conduct a review of the case file in advance of trial, even though he knew at least the trial date. We are unable to fault the trial court's conclusion that this broader professional failure did not justify the failure to detect an otherwise excusable clerical error as to the trial time.

13

Consistent with *Huh*, the trial court acted within the scope of its discretion in concluding that former counsel's neglect was inexcusable. The trial court determined that the calendaring error was only the start of a series of unprofessional errors that combined to cause Wu's failure to appear; counsel's inexcusable neglect of "routine" preparation that might have disclosed the error compounded what might otherwise have been excusable as a mere clerical error. That is, if Schumann had met minimal standards of professional conduct in preparing for the trial date he knew was imminent, he would have corrected his calendaring error and properly advised Wu of the correct trial time. Although Wu faults the trial court for "speculation" about what would have happened if counsel had acted more professionally, the trial court's determination found substantial support in counsel's declaration. It was Schumann who declared, at Wu's behest, that he "would have" caught his calendaring error "upon routine follow-up on the file, including review of [c]ourt orders related to the continuance. However, work-flow was completely disrupted on June 5, 2022" when the van he was using as an office broke down. Thus, Wu's evidence provides substantial support for the trial court's determination that Schumann would have caught the error if he had simply completed routine work on the case, and that notwithstanding the fast-approaching trial date, he failed to do so.

Challenging the trial court's reasoning, Wu contends that, as a matter of law, the negligent failure to catch and correct an excusable error is immaterial to the availability of relief under section 473. But, in seeking relief for mistake, inadvertence, or general neglect, Wu bore the burden of demonstrating that the error was excusable. (*Zamora*, *supra*, 28 Cal.4th at p. 258.) Here, Wu seeks relief from the adverse result of a *series* of errors, without any meaningful attempt at defending any but the first and least egregious. Moreover, the authorities Wu cites do not support her position. (See *Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270 (*Bettencourt*); *Melde v. Reynolds* (1900) 129 Cal. 308 (*Melde*).)

14

In *Bettencourt*, plaintiffs sought relief from the claim presentation requirement of Government Code section 945.4 after their counsel erroneously presented their tort claim to the State Board of Control, on the assumption that the employees of defendant Sacramento City College were state employees. (*Bettencourt*, *supra*, 42 Cal.3d at p. 276.) The Supreme Court held counsel's mistake was a reasonable one because "public higher education in California presents a sometimes confusing blend of state and local control and funding." (*Ibid*.) The defendant argued opposing counsel should have realized that his assumption was incorrect when defendant sent him a cover letter on letterhead indicating that Sacramento City College was part of Los Rios Community College District. (*Id*. at p. 277.) The cover letter merely listed enclosures and apologized for a delay in responding to counsel's request for information. (*Ibid*.) The Supreme Court rejected the argument, reasoning that counsel had already decided whom to sue and would have acted reasonably by devoting little, if any, attention to the letterhead on the cover letter, directing his attention instead to the enclosures. (*Ibid*.)

In *Melde*, the defendant's original counsel, Shadbourne, litigated an unsuccessful motion to dismiss and agreed to a trial date. (*Melde*, *supra*, 129 Cal. at p. 310.) A few days prior to trial the defendant expressed dissatisfaction with Shadbourne's "course" and Shadbourne "suggested that he get another attorney, which he said he would do." (*Ibid*.) The defendant then retained two new attorneys, one of whom—Murasky—instructed his managing clerk to review the file. (*Ibid*.) The managing clerk determined that a trial date had been set, but the date was not contained in the file. (*Id*. at pp. 310–311.) Murasky contacted the court clerk and the judge of the department to which the case had been assigned to request the trial date but was told that the cause did not appear on the calendar for any date such that it would not be reached for trial for at least three months. (*Id*. at p. 311.) With this information, Murasky informed the defendant that the trial would not occur for at least three months, and the defendant left San Francisco for Japan. (*Ibid*.) Unbeknownst to Murasky, the reason that the trial was not on calendar in the

15

department to which it had been assigned was because the action had been transferred to a different department. (*Ibid*.) Accordingly, the defendant failed to appear at the trial a few days later, during which the cause was tried and judgment rendered in favor of the plaintiff. (*Ibid*.) The Supreme Court explained that the issue presented to the trial court was whether Murasky's "failure to learn [the trial date] was under the circumstances excusable, or was the result of carelessness or inattention." (*Id*. at p. 312.) The Supreme Court held that "the facts presented . . . established an ample excuse for [the defendant's] failure to be represented at the trial." (*Id*. at p. 313.) In so doing, the Supreme Court rejected the argument that Murasky should have ascertained the trial date from "the columns of the 'Daily Law Journal' " because Murasky was permitted to rely on his investigation. (*Id*. at p. 313.)

Both *Bettencourt* and *Melde* are examples of fact-specific reasonableness analyses of the respective counsel's failure to timely correct their mistaken understanding. The same analysis is what the trial court performed here, albeit on different facts. Here, Schumann stated that he would have reviewed the file, and in so doing would have identified the correct time for trial, had he not been overwhelmed with other work and the issues with his van. To the extent the trial court found that these impediments to learning the correct time for trial were inexcusable due to Schumann's carelessness and inattention, we are hard pressed to second-guess that determination. Wu has not shown that the trial court abused its discretion in denying discretionary relief. (See *Zamora*, *supra*, 28 Cal.4th at p. 257.)

### b.     *Abandonment*

Wu argues in the alternative that the trial court's determination that her counsel's error was inexcusable entitled her to discretionary relief on abandonment grounds. Wu, however, forfeited this line of argument by failing to raise it in the trial court.

"[B]ecause inexcusable neglect is ordinarily imputed to the client," the client's redress is generally an action for malpractice rather than relief under section 473.

16

(*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 738 (*Aldrich*).) But "[a]n exception to this rule allows relief where the attorney's neglect, although inexcusable, was so extreme as to constitute misconduct effectively ending the attorney-client relationship. 'Abandonment' may afford a basis for relief, at least where the client is relatively free of fault, but performance which is merely inadequate will not. . . . For the exception to apply, the attorney's misconduct must be sufficiently gross to effectively abrogate the attorney-client relationship, thereby leaving the client essentially unrepresented at a critical juncture in the litigation." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 682–683; see also *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901 (*Carroll*) ["de facto severance of the attorney-client relationship" is necessary to bring exception into play]; *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 208 (*Seacall*) [doctrine requires " 'total failure on the part of counsel to represent the client' "].) In cases of abandonment, the court sitting in equity considers "whether the client demonstrated sufficient diligence in seeking relief upon discovery of [the] attorney's improper conduct," and whether the opposing party "suffered prejudice from the delay." (*Aldrich*, *supra*, 170 Cal.App.3d at p. 740; see also *Seacall*, *supra*, 73 Cal.App.4th at p. 208.)

But " '[a] party may not for the first time on appeal change its theory of relief.' " (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 944; see also *People v. Trujillo* (2015) 60 Cal.4th 850, 856 [right may be forfeited by failing to timely assert].) Wu did not raise abandonment in the trial court. In her briefing and at the hearing, Wu pressed two arguments: (1) section 473 entitled Wu to discretionary relief from the adverse rulings caused by a calendaring error by her counsel, an excusable mistake; and (2) section 473 entitled Wu to mandatory relief from the adverse rulings.

It was Brady who argued at the hearing that Wu's prior counsel had abandoned her. Notably, Wu responded that her prior counsel's "withdrawal or intent to withdraw as counsel of record . . . is not the reason the hearing was missed. The reason the hearing

17

was missed was because of a clerical calendaring error on his part." Far from raising abandonment then, Wu argued that her prior counsel's withdrawal was immaterial.

Notwithstanding this record, Wu argues that she did raise abandonment in that her brief in support of the section 473 motion cites *Aldrich* for the proposition that "[s]ection 473 serves as statutory authority for the court to exercise its equitable power" while discussing the court's authority to grant relief under that statute. Wu notes that the page of *Aldrich* to which she cited contains within it a citation to *Carroll*, which in turn discusses abandonment, and that other portions of the *Aldrich* opinion that she did not cite to or discuss address abandonment.

In effect, Wu is asking us to conclude that a brief raises every argument that could have been made based on any authority cited within it, or authority cited within authority cited within it, including arguments that the party never expressly mentions. We decline: the purpose of the forfeiture doctrine "is to encourage a [party] to bring errors to the attention of the trial court, so that they may be corrected or avoided." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) To allow parties to raise on appeal claims of error that they never fairly presented to the trial court in the first instance would turn the forfeiture rule on its head and burden trial courts with parsing the parties' cited authority more searchingly than the parties themselves have.

Wu's reliance on *Bergloff v. Reynolds* (1960) 181 Cal.App.2d 349 (*Bergloff*) and *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003 (*Solv-All*) is unavailing. (See *Bergloff*, *supra*, 181 Cal.App.2d at pp. 357–358 [although notice of motion did not specifically state the grounds on which request to set aside order of dismissal would be based, the basis was clearly discernible from the supporting affidavit and points and authorities]; *Solv-All*, *supra*, 131 Cal.App.4th at pp. 1008–1009, fn. 5 [noting that any defect in designation of issues in notice of motion was cured by clear references in related papers].) The basis on which Wu sought relief was clearly discernible from the record—but abandonment was not that basis.

An appellate court may permit an appellant to assert an argument for the first time on appeal if it presents a question of law on undisputed facts. (*People v. Runyan* (2012) 54 Cal.4th 849, 859, fn. 3.) But Wu's abandonment argument does not involve the sort of purely legal analysis that may be undertaken in the first instance on appeal. "What constitutes 'abandonment' of the client depends on the facts in the particular action." (*Seacall*, *supra*, 73 Cal.App.4th at p. 205.) Here, there is conflicting evidence as to whether Wu's prior counsel continued representation through the trial date or ended representation prior to the trial date. On one hand, Wu's prior counsel declared that he informed Wu she would need new counsel the day before the trial and instructed her on how to go about securing a continuance in his absence. On the other, Wu's prior counsel took no action to formally withdraw and continued to correspond with opposing counsel as Wu's representative following the trial date. The need to reconcile these discordant facts and evaluate the credibility of prior counsel's representations regarding the events leading up to the nonappearance is precisely why this issue needed to be raised in the trial court. But Wu made a strategic decision to rely on a different argument—that the cause for the adverse rulings was not any abandonment on the part of counsel but an excusable calendaring error. Having done so, Wu forfeited the abandonment argument.

**D.    *Fee Motion***

Brady contends that the trial court erred in awarding less than the full amount she requested in attorney fees, such that it should be directed to reconsider the fee issue.[6] Although we discern some merit in Brady's contention (among others) that the trial court expressly based its reduced fee award on a factual error, Brady raises no reasonable likelihood of a more favorable result absent the error.

---

[6] Wu's appellate challenges to the fee order are predicated on the success of her challenge to the order on the section 473 motion. Because the latter challenge was unsuccessful, we do not reach the former.

19

### 1.    *Standard of Review*

"We review attorney fee awards on an abuse of discretion standard.  'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." '  [Citation.]" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*).)

### 2.    *Brady's Entitlement to Fees*

Brady claims entitlement to fees as a prevailing party alternatively under both a contract and section 527.6, subdivision (s).  The trial court awarded fees pursuant to section 527.6, subdivision (s) without reaching Brady's entitlement to fees under the contract.  Neither party challenges the trial court's discretionary decision to award Brady attorney fees as the prevailing party.  (See generally *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802 [award of attorney fees to prevailing party is committed to the discretion of the trial court]; *Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443–1444 [reviewing prevailing party determination for abuse of discretion].)  Nor does Brady articulate how the failure to address her potential entitlement to fees under a contract could have prejudiced her in connection with the trial court's calculation of a reasonable fee.[7]  Accordingly, we turn to the lodestar-multiplier calculation the trial court used to fix a reasonable fee.

### 3.    *The Trial Court's Lodestar-Multiplier Calculation*

"[T]he lodestar-multiplier method[] calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has

_____

[7] Brady states that the court "failed to address the fact that the contractual attorney fee provision . . . applied, which further supported the . . . fee request."  But Brady fails to elaborate.  It is not apparent how the trial court's exploration of an alternate theory for the recovery of reasonable fees could have helped Brady, given that the trial court decided to grant her request for fees.  We treat this undeveloped line of argument as forfeited.  (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153.)

fixed the lodestar, it may increase or decrease that amount by applying a[n upward or downward] "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' [Citation.]" (*Laffitte*, *supra*, 1 Cal.5th at p. 489.)

Here, the trial court calculated the fee award using the lodestar-multiplier method. No party suggests that it was improper for the trial court to use that methodology in this case.

Brady's counsel charged a rate of $400 per hour, which the trial court found reasonable. In her moving papers, Brady sought fees for 64.9 hours of work—$25,960. In her reply, Brady increased the request by 56.15 hours, to 121.05 hours—or $48,420. At the hearing, Brady's counsel stated: "In addition to the attorney fees that we're requesting in the paperwork, after we made our reply brief submission, we had additional fees of $7,860. And I declare under penalty of perjury that those were reasonably and necessarily incurred, bringing the total amount that we're requesting to $56,280." Thus, Brady purported to further increase her request at the hearing by another 19.65 hours, to 140.7.

The trial court observed at the hearing that "56,000 is a lot in a civil harassment case." In its written order, the trial court found that Brady's counsel "spent approximately 65 hours of work in preparation for the June 13, 2022 hearing" in "a serious[] but routine" civil harassment case, spent "much work . . . 'reviewing' and 'revising' and 'rechecking' paperwork," and provided "vague" billing entries, including with respect to posttrial work. Based on these issues, the trial court adjusted the award downward "by 25 hours, or $10,000." Without further explanation, the trial court awarded $38,420. In so doing, the trial court effectively awarded Brady fees for 96.05 hours of work at $400 per hour, without a multiplier.

21

**4.** *Analysis*

Brady's appellate contentions can be broken into two groups. First, Brady contends that the trial court misunderstood the scope of its discretion. Second, Brady contends that the trial court made factual mistakes. We reject the contention that the trial court misunderstood the scope of its discretion. Further, although we agree that the record indicates that the trial court made a factual mistake, we are not persuaded that the factual mistake was prejudicial.

The record does not reflect that the trial court misunderstood the scope of its discretion. Brady contends that the trial court "overlooked principles indicating that attacks on invoices must reference specific entries" and improperly demanded "intricate detail" in the billing statements, "ignored authority indicating it is only unnecessarily duplicative work that can be challenged," and "ignored the critically important fact that no declaration from any knowledgeable expert or attorney had been offered to undercut the Brady fee request." These contentions misallocate the burden of proof and overstate the particularity required in a trial court's fee order. (See generally *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 63–67, 98, 101 (*Gorman*); *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1189–1190 (*SOURCE*); *Baxter v. Bock* (2016) 247 Cal.App.4th 775, 793 (*Baxter*).)

Brady is "not entitled to compensation for . . . work merely because it was performed. It was [her] burden to persuade the trial court the work was reasonably necessary, both as to the particular tasks performed and the amount of time devoted to them." (*Baxter*, *supra*, 247 Cal.App.4th at p. 793.) Indeed, there is authority for the proposition that the trial court was not required to set forth an order explaining its reasoning. (*SOURCE*, *supra*, 235 Cal.App.4th at pp. 1189–1190; *Gorman*, *supra*, 178 Cal.App.4th at p. 101.) It is Brady's burden on appeal to demonstrate that the trial court

prejudicially abused its discretion. (*Gorman*, *supra*, 178 Cal.App.4th at p. 98; *SOURCE*, *supra*, 235 Cal.App.4th at p. 1189–1190; see also *Laffitte*, *supra*, 1 Cal.5th at p. 488.)

The trial court's written order reflects that it reviewed Brady's submissions, considered their persuasiveness in the context of the action that had been litigated before it, and determined that Brady's counsel was seeking recovery for more work than was reasonably necessary. Accordingly, the trial court reduced the award to an amount that it deemed reasonable—discounting 25 hours from the total hours worked through the filing of the reply brief and thereby implicitly rejecting the request for additional hours made at the hearing. The trial court did not exceed the scope of its discretion in engaging in this mode of analysis.

Brady raises two issues with the trial court's written order: (1) Although Brady claimed fees for approximately 65 hours of work that had been performed up to the filing of her moving papers, the trial court erroneously attributed all of that time to preparation for the hearing, when only 11.6 hours were for trial preparation; and (2) the trial court did not mention the additional amount of fees Brady requested during the hearing. Although we are required to indulge all intendments and presumptions in support of the award on matters as to which the record is silent (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140), we are persuaded that the trial court's finding that approximately 65 hours of work were spent on trial preparation is irreconcilable with the evidence supporting the fee request.

Preliminarily, we reject Brady's first contention that the trial court's decision not to mention the additional amount of fees Brady requested during the hearing in its written order demonstrates a factual error. The trial court was well aware of the request for postreply fees made orally at the hearing, as it specifically commented on the total size of Brady's fee request, even though it did not mention the request in its written order. We infer that it considered the request, but determined that the total number of hours it allocated was reasonable on the full record before it.

23

The record does disclose that the trial court made one factual error.  The trial court's statement that "[Brady's] counsel spent approximately 65 hours of work in preparation for the June 13, 2022 hearing" is not supported by the record.  Some of the discrepancy between this number and the 11.6 hours Brady now attributes to trial preparation can be attributed to a semantic disagreement concerning what pretrial work might best be described as preparation for trial.[8]  Even so, the 64.9 hours Brady included in her request for time worked up to that date included 10.4 hours of work performed after the date of trial—time that cannot be described as trial preparation under any definition.[9]  Thus, even if all of the time for which Brady sought compensation for work up to and including the date of trial were counted as trial preparation, the total would be 54.5 hours.

But Brady has made no attempt to articulate how the trial court's understanding of the allocation of time between trial preparation and other work was likely to have prejudiced her in the court's ultimate determination of the total reasonable hours

[8] We reject Brady's contention that the trial court was required to categorize no more than 11.6 hours as trial preparation, a figure Brady reaches by counting only time entries from June 8 to 13, 2022.  Counsel's contemporaneous time records do not support Brady's calculation, reflecting as they do billing for "hearing preparation" as early as May 30, 2022, for example.  Moreover, we do not consider it unreasonable for the trial court to have viewed all work prior to the hearing as facilitating preparation for what was to be a final hearing on the merits.

[9] In his narrative description, Brady's counsel aggregated the hours claimed into three tranches:  (1) 6.5 hours of work through the filing of the request for a restraining order (which Brady filed as a self-represented litigant); (2) an additional 27.2 hours of work through the filing of a memorandum and proposed order in support of the request for a restraining order; and (3) an additional 31.2 hours of work encompassing subsequent trial preparation, posttrial preparation of the proposed order, addressing alleged ongoing violations of the order, communicating with new counsel, and preparing the fee motion.  Though vague and unilluminating as to the reasonableness of the hours claimed, counsel's description does reflect that the claimed time includes posttrial work.  And counsel provided billing entries that allow calculation of the amount of work performed following trial.

24

expended. The trial court's assessment of the time spent on trial preparation is only one of several reasons that the court articulated in support of its decision to award compensation for about 96 hours of work, as opposed to the greater number Brady claims. The trial court also reduced Brady's fee award because this was "a serious[] but routine case"; counsel devoted much time to " 'reviewing,' " " 'revising,' " and " 'rechecking' " paperwork; and counsel included "vague" entries in his billing invoices. To be sure, Brady disputes the trial court's determination that this case was "routine" and that counsel's billing was in any way unreasonable. We are unpersuaded by Brady's apparent conviction that it would have been reasonable to expend even more attorney hours on the theory that she "could not suffer a risk of loss. Her very life was at stake." While the trial court treated the suit as "serious," the record before the trial court did not compel it to conclude that the harassment Brady attributed to Wu was as threatening as Brady represents it to have been. We likewise see no reason to disturb the trial court's determination that litigation of this case was "routine"—the principal focus of the dispute was a single altercation between the parties with few percipient witnesses. The trial court could also quite reasonably describe counsel's billing invoices, as well as the declaration supporting the fee motion, as vague.

Given that the trial court correctly identified the number of hours Brady was claiming through the filing of her reply and that the trial court indicated a more general belief that counsel claimed an unreasonable number of hours for a "routine" case, Brady has not shown any reasonable probability that the trial court would have found a higher fee reasonable if it had understood that her counsel spent less time on trial preparation and more time on other tasks. (See generally *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802 [discussing prejudicial error].) The trial court's factual mistake is double-edged—to the same extent it understood that Brady was claiming more hours than she actually had for trial preparation, it understood that Brady was claiming fewer hours than she actually had for other tasks. In view of the trial court's overarching

25

determination that Brady's total claim was more broadly defective, we are not persuaded that simultaneously reducing the amount of time Brady claimed for trial preparation while increasing the amount of time Brady claimed for other work would have had a reasonable chance of inuring to Brady's benefit.

### III.   DISPOSITION

We affirm the trial court's November 10, 2022 Decision and Order Denying Respondent/Cross Petitioner's Motion to Set-Aside the Orders of June 13, 2022.  Brady is entitled to her costs on appeal incurred in connection with Wu's appeal challenging that order.  (See Cal. Rules of Court, rule 8.278(a)(1)-(2).)

We affirm the trial court's December 23, 2022 Decision and Order Granting Petitioner's Motion for Attorneys' Fees.  In the interests of justice, the parties shall bear their own costs in connection with the appeals from the fee order.  (See Cal. Rules of Court, rule 8.278(a)(5).)

_____

LIE, J.

WE CONCUR:

_____

GROVER, ACTING P.J.

_____

BROMBERG, J.

*Brady v. Wu*
H050657
H050719